The facts, involved in this action, are thus stated and transmitted to this Court, by his Honor, as part of the record. (410)
1. On the 10th of August, 1958, one Jacob Alphin, being indebted to R. H. L. Bond in four notes of $1,100.06 each, of date January, 1856, to which John Boothe and John Alphin, (the testator of the defendants, John Alphin Costen Jordan,) were sureties; one of which notes had a credit of $1,052 thereon endorsed; and being further indebted to Jacob Hinton, the intestate of the defendant, John G. Gatling, in four other notes of $1000 each, of date 21st January, 1858, to which the said Bond and John W. Hinton were sureties; and also indebted to other sums due other persons, but over which the eight notes above set out, had priority of payment, made a deed in trust, conveying to Shadrach W. Worrell two lots in the town of Gatesville, known respectively as the U.S. Hotel lot, containing about twenty acres of land, and the Hotel stable lot, together with certain personal property, particularly described in the deed, for the purpose of paying his debts and saving his sureties harmless.
The trustee, Shadrach W. Worrell, was empowered to sell (411) either publicly or privately the property conveyed, and apply the proceeds in payment of the said eight notes, equally.
2. The personal property, with the exception of a quantity of hotel furniture, still in the possession of the defendant, John Brady, was lost by the results of the war.
3. On the 1st November, 1858, the trustee sold the property conveyed, or so much of it as was not lost real and personal, to the defendant, Brady, for the sum of $9,500, receiving in payment a lot in Gatesville, which was valued by the trustee and Brady at $1000, (and the title to which was taken to the defendant, Worrell, individually,) and four bonds executed by Brady, for $1,150 each, payable on the 15th day of January, 1860-'61-'62 and 1863, respectively, and three other bonds, each for the sum of $1,300, payable on the 14th day of January, 1859-'60 and 1861, respectively, all bearing interest from the said day of sale, the 1st day of November, 1858. To secure the payment of these notes, the purchaser, Brady, re-conveyed the property to Worrell, the first trustee in trust, c.
4. Three of the notes due by Alphin, and to which Boothe and John Alphin were sureties, were purchased from Bond, the payee, by the defendant, David Parker, for himself; and the remaining note of that class was bought by him, as agent for his brother, the defendant, James W. Parker, before the execution of the deed in trust. Of the four *Page 336 
notes due to Jacob Hinton, one was sold by him to Jacob Parker, two others to the plaintiff, and one seems to have been paid to him by the trustee.
5. Of the notes given to Worrell, the trustee, by Brady, for the purchase of the trust property, the three for $1,300 each, were paid at maturity in money; and so also was one of the $1,150; a second of these was paid in 1863, in Confederate money; a third was taken up by Brady during the war, upon his surrendering to the trustee one of the notes due Bond, which Brady had purchased from Parker, the first purchaser as aforesaid for the purpose, and with the consent of the parties, and the fourth was taken up by surrendering to the (412) trustee, one of the said notes payable to Jacob Hinton, and by him sold to Parker, and obtained by Brady under circumstances hereinafter described; whereupon the trustee conveyed to Brady the trust property absolutely.
6. Of the notes due Bond and purchased by David Parker, one was paid in full, as was also the balance of a second, after allowing the credit before stated of $1,050, or about the commencement of the war; the third was paid to David Parker by Brady, under the circumstances before recited, who also paid on the fourth note the sum of $350, April 10th, 1860, to James H. Parker, this last being sued on in Gates Superior Court, 1868, and judgment obtained thereon. This, too, has been paid in full, by the executors of the surety, John Alphin, the only solvent obligor.
In 1868, the condition of the trust fund and the notes primarily secured in the trust, was as follows;
The trustee, then resident in Baltimore, and insolvent, still held in his hands one only of the notes given for the purchase of the property by defendant, Brady, for $1,150 and interest. Of the notes secured by the trust, David Parker, another defendant, held as his own property, one of the four, payable to Jacob Hinton, for $1000 and interest. The sureties in this note at that time were insolvent. Parker also held, as agent of his brother, the defendant, James H., one of the Bond notes for $1000 and interest, one of the sureties to this being solvent. The plaintiff, Willey, partly in his own right, and partly for Jacob Hinton, held one of the notes payable to said Jacob Hinton for $1000 and interest. All of the rest of the eight notes had been paid, or otherwise taken in, except one of the Jacob Hinton notes, also then held by the plaintiff, but which at the first trial of this action, the jury found to have been paid in Confederate money in 1863.
In the Summer of 1868, the defendant Brady, having solicited of *Page 337 
David Parker a loan sufficient to pay off the balance due in his purchase of the trust property, so that he could procure an absolute title to the same, was informed by Parker that he had no money (413) that he could lend, but that he did have one of the Jacob Hinton notes. He, Brady, borrowed this note of $1000, giving in exchange therefor his individual note without security, and that he and Parker went to Baltimore, surrendered this, the Hinton note, to the trustee, and took up his own $1,150, the only part of the trust funds then in the hands of the trustee; whereupon the trustee made Brady a deed for the property he had theretofore purchased. On their return, Brady and Parker had a settlement, and Brady gave him his individual note for the amount due him, (Parker,) including the amount of the Hinton note, borrowed as aforesaid. On this note Parker brought suit, and at the return term obtained judgment for want of a plea, execution issued, and under it, and others against Brady, the whole controlled by David Parker, the property bought of the intestate and all the other property of Brady was sold and purchased by Parker. The plaintiff was present at the sale, and read a written notice of his claims on the trust property.
At Fall Term, 1869, the plaintiff brought suit, alleging his possession and ownership of the two notes, secured as hereinbefore set forth, by the trust made by Alphin, and charging, in substance, the facts above stated, and praying for an adjustment and settlement of all the equities arising under the said deed of trust, and for other relief, c. At Spring Term, 1871, the case was submitted to a jury, by his Honor, Judge POOL, who left the question of payment to their decision under the evidence. He charged, that if there was any understanding or knowledge or agreement between Brady and Worrell, or any two of them, that the trustee should apply the payment made to him to the notes of the testator held by one creditor, to the exclusion of those held by another creditor, to the prejudice of the latter, such notice or agreement would constitute collusion.
The plaintiff requested his Honor to charge, that upon the facts ascertained, and not controverted, the question of fraud was one of law, and that upon the facts set up by the defence, there was (414) such collusion and constructive fraud, as to prevent either the defendant Brady, who purchased under the trust, or the defendant, Parker, who purchased under the execution against Brady, with notice of the plaintiff's claim, from holding the trust property discharged from the equities created by the trust, and still outstanding. His Honor refused to give the instructions, but charged as before recited.
The jury found first: that both the notes of the plaintiff had been *Page 338 
paid by the trustee; second: that there was no collusion between the defendants.
Upon this verdict there was a judgment and appeal to the Supreme Court.
The Supreme Court, without rendering an opinion upon the refusal of his Honor to give the instructions asked, or upon the charge as made upon the question of fraud and collusion, directed that the plaintiff should have leave to move for judgment upon the second note described in the complaint, notwithstanding the verdict of the jury; and that the defendant, Shadrack W. Worrell should have leave to replead, in case he should so elect.
Upon this being certified to the Court below, the plaintiff moved for judgment upon his second note, and the defendant Worrell, asked leave to replead. The motion of the plaintiff was denied, and the defendant, Worrell, was allowed to replead, alleging in his repleader, payment of the said second note.
Upon the trial, at Spring Term, 1873, the following issues were submitted to the jury:
1st. Has the plaintiff such an interest in the second note described in the complaint as enables him to maintain this action?
2nd. Has the said second note been paid?
On the trial, the plaintiff testified, that he had received the note from the payee, Jacob Hinton, in the summer of 1866, and had held the same ever since as his own. That it was handed to him at (415) the house of said Hinton by himself or his wife in his presence, and by his direction, under an agreement that the plaintiff was to take and collect the note if he could. If collected, the plaintiff was to allow $800 in part payment of the notes he held against Hinton, and credit them therewith, and pay over any excess to Hinton, or as he should direct. That he had never applied to the defendant, Worrell, for payment of this note since he held it, nor spoke to him about it until after bringing this suit, giving as a reason for not making the demand, that Worrell had removed to Baltimore, before the delivery of the note to him, and resided there up to the bringing of the action. That no money or consideration, other than that stated, was given for the note, and it was transferred by delivery and without endorsement or assignment in writing, and that no credit had ever been put on any notes of said Hinton, belonging to witness.
Mary Hinton, widow of said Jacob Hinton, for the plaintiff, stated in her deposition, which was read, that she first saw the note in the summer of 1862, and saw it last in 1866, when it was taken out of the box, which contained her late husband's valuable papers, at his house by *Page 339 
her, under his directions, and handed to the plaintiff as testified to by him; that it was then clean and nice. That she did not know the date, amount or the name of any of the parties who signed it, but did know the note from its general appearance and from having heard it read. That no money was paid at the time, and nothing said about the terms of transfer to the plaintiff. (The note was not shown to witness when she was examined.)
The deposition of the defendant, S.W. Worrell, taken just before his death, was then read in evidence, in which he testified, that according to his recollection, he had paid off this note, and taken it up and filed it among his papers relating to his administration of the trust funds; and that it was in his desk at his store in Gatesville, with other valuable papers and his account books, at the time of the visit of the Federal troops to that place, during the war; that the desk was broken open by the troops, his papers pilfered and carried off or destroyed, and he had his memory only to rely on, as to these (416) transactions and his dealings with the trust fund.
The defendant, Brady, testified as to the fact of the visit of the Federal troops to Gatesville, and the privilege of Worrell's store, and County Court Clerk's office, and that many papers belonging to the latter was afterwards found in the streets.
On the trial, the defendant insisted:
1st. That the plaintiff was not entitled as assignee or owner of the note, to maintain an action therefor in his own name:
2nd. If he could maintain an action, he was only entitled to recover the sum of $800, or a part thereof:
3d. That upon the evidence, and in reconciling the same, the note had been paid and taken up by Worrell, and had been picked up by some one unknown and carried and delivered to Jacob Hinton, and the jury should so find.
The defendant submitted certain instructions, which he asked the Judge, (before commencing his charge,) to give to the jury; this his Honor declined to do.
In the course of the argument, the plaintiff's counsel read and commented on certain parts of the answer of Worrell, as originally put in; to which, the defendants objected, upon the ground that he could not select and read parts only without also reading the whole answer. These objections were overruled by his Honor, who remarked that defendants' counsel could, if he choose, read the omitted parts of the answer on their argument to the jury — which was done. *Page 340 
The Court charged the jury, among other things:
1. That if the jury believed the facts testified to by the plaintiff, he could maintain the action.
2. That if the jury believed the evidence of Worrell, they should find the note to have been paid; but if they should believe the evidence introduced by the plaintiff, they should find that it had not been paid.
The jury returned as their verdict, First, that the plaintiff did have such an interest in the said note as would enable him to (417) maintain the action; Second, that the said note had not been paid.
From the ruling and charge of his Honor, as above set forth, the defendants appealed.
Upon the foregoing finding of the jury, the Court delivered the following judgment:
1. That the trustee, Worrell, had no power under the deed in trust, to exchange the property conveyed for other property; and that the deed in trust being registered, the purchaser, the defendant Brady, was affected with notice of the trustee's powers, and therefore, in conveying the lot mentioned, as part payment of the purchase money for the trust property, he, Brady, became a party to the breach of trust; and the trustee having subsequently wasted the fund, the trust property is subject in Brady's hands to the extent of $1,000, with interest from 1st of November, 1858, to be applied to the satisfaction of so much of the original trust debts as may be outstanding.
II. That the defendant, Brady, who purchased the trust property, having undertaken to satisfy portions of the trust debt, without the intervention of the trustee, thereby substitutes himself as trustee, to the extent of rendering the trust property in his hands liable to payment of those creditors secured by the trust, whose equal right to the fund has been disturbed by payments made by him as aforesaid; and he must now pay from the trust property, to the unsatisfied trust creditors, a sum sufficient, after the application of the aforesaid $1,000 and interest, to make their benefit under the trust equal to any creditor to whom he, Brady, has made payments.
III. That the transactions, which in the summer of 1868, between the defendants Brady and David Parker, whereby, by permitting said Brady to use one of the trust notes then owned by defendant Parker, said Brady was enabled to procure to himself the title to the trust property, and by confessing judgment on the notes made by him to Parker for such trust note, Parker was enabled to have the trust property sold to satisfy the debts due him from Brady, was such collusion in law as renders him liable to contribute from the amount then *Page 341 
due by Brady to the trustee on his purchase of the trust (418) property, to wit: the sum of $1,150, with interest from said 1st of November, 1858, and which, by said transactions was applied to the only payment of said Parker, to the unsatisfied creditors of the trust fund until their benefit from said amount then due as aforesaid, shall be equal to that received by said Parker.
IV. That the executors of John Alphin, deceased, the defendants Costen Jordan and John Alphin, having in greater part paid the trust note held by David Parker as agent of the defendant, James H. Parker, are subrogated to his rights as a creditor of the trust fund, and are to be considered, to the amount of their said payments, as such creditors.
V. It was the duty of the trustee, in the summer of 1868, when the only part of the said trust fund then remaining in his hands was the said sum of $1,150, due by Brady as aforesaid, to take an account of the indebtedness of the fund, and to have divided such remainder equally among all the creditors unsatisfied; and any creditor having received, directly or indirectly, a larger share of said fund than that to which under such equal distribution he was entitled, must contribute to those whose equality of payment has been distributed, until that equality is restored.
VI. It is further the opinion of the Court, that the said deed in trust, having been made for the purpose of saving harmless the sureties to said debts, as well as the payment thereof; and the defendant, David Parker, having in his hands in the summer of 1868, of said trust notes for $1,000 with interest, the sureties to which were all insolvent, and having in his hands, as agent of his brother, the defendant James H. Parker, another of said notes for $1,100, upon which a payment of $350 had been made, one of the sureties to which was solvent, to wit: the testator of the defendants, Costen Jordan and John Alphin; the defendant David Parker should have applied any benefit received by him from the trust fund, whether directly or indirectly, to thepro rata payment of both notes; and to this extent, he was in (419) equity, a trustee for the benefit of such sureties, and could not by any action however circuitous, apply the whole fund to the insolvent note, and collect the entire amount of the other note from the solvent surety; and the said executors having paid the entire amount under a judgment at law, David Parker must now pay to them their pro rata
share of said fund as aforesaid.
VII. The defendant, David Parker, having bought the trust property, *Page 342 
under his executions against the defendant, Brady, with full notice, the said property is still liable in his hands:
It is therefore ordered by the Court,
That ___________________ be appointed Commissioner, who will take into his hands all the said trust property, and after making advertisement according to law, prescribed in making sales under execution, shall sell the same on such terms as may seem to him best, and make report to this Court of what he shall do under this order.
It is further ordered, that the said ___________________ state an account:
1. Of all indebtedness now outstanding, which was secured by said trust deed of 10th August, 1858;
2. The amount of such indebtedness, after applying the proceeds of sale of said property to be made by him as aforesaid, to the extent of $1,000, with interest, the value of the lot conveyed to the trustee by the defendant, Brady;
3. The amount of such indebtedness, after further applying the proceeds of said sale to an amount equal to all payments made to any of the creditors by the defendant, Brady; and in ascertaining such payments, the Commissioner will consider the notes claimed by defendant, David Parker, to have been sold or loaned by him to the defendant, Brady, as payments made by Brady.
4. The amount of the trust fund remaining in the hands of the defendant, S.W. Worrell, at the time of the last of the notes executed to him by the defendant, Brady, was surrendered to Brady, and the title to the property re-conveyed to him.
5. The amount of the trust notes held by David Parker, whether in his own right, or as agent of his brother aforesaid, at the time (420) he claimed to have sold one of the trust notes to the defendant, Brady, in or about the summer of 1868.
6. The total amount of payments made on the trust note held by the defendant, David Parker, as agent of his brother; by the defendants, Costen Jordan and John Alphin, as executors of John Alphin, deceased.
In stating the amount of said indebtedness, the Commissioner will consider the payments made by said executors as a part thereof.
After taking such account the Commissioners will report, c.
Appeal by defendants, as hereinbefore stated.
Among other defences set up in the answer are the following:
1. The plaintiff has no such interest in the note as entitled him to sue.
2. The note had been paid.
At Spring Term, 1873, of the Court below, the case was tried, and two issues were submitted to the jury:
1. Has the plaintiff such an interest in the note as entitles him to sue?
2. Has the note been paid?
The jury found both issues for the plaintiff; that he had such interest as entitles him to sue, and that the note had not been paid.
The first issue was not put to the jury in the best form; because it involves a question of law which was not for them, but for the Court.
What interest the plaintiff had in the note, was a question of fact for the jury; whether such interest entitled him to sue, was a question of law for the Court. It turns out, however, that no injury resulted from it; because the facts were stated by the plaintiff and not denied by the defendant; and his Honor charged the jury, that (421) if they believed the facts as stated by the plaintiff, then he was entitled to sue. The facts as stated were that the note had been handed over to plaintiff without endorsement, by the payee, to collect, and out of the money when collected, to pay himself a debt which the payee owed him ($800) and the balance pay over to the payee.
We are of the opinion that his Honor was right in that charge.
Upon the second issue his Honor charged the jury that if they believed the evidence of the defendant Worrell, they should find the note paid; but if they believed the evidence offered by the plaintiff, they should find that it had not been paid.
We have frequently said that this is a very unsatisfactory way of putting a case to the jury; and that there are very few cases where it can be allowed, and none in which it can be necessary. In this case the jury might have believed every word of Worrell's testimony and yet not find the note paid; for he said only, that, "according to his recollection, he had paid it." And on the other hand they might have believed every word of the testimony offered by the plaintiff, and yet have believed that the note had been paid to the original payee, before the plaintiff got it. The proper charge would have been, that they should consider all the evidence offered on both sides, and find the fact according to their convictions.
For this error there must be a new trial.
The foregoing are all of the exceptions to the Judge's charge. And *Page 344 
upon these exceptions alone, the case is now before us. It seems, however, that the case had been tried before at ___________ Term, 1871; and an appeal had been taken from that trial to this Court. And at June Term, 1871, the case was remanded. And upon amended pleadings, there was a second trial in the Court below, and from that trial an appeal was taken; and that is the trial which we are now reviewing. And it is clear that we are confined to a review of the last trial; yet (422) the case shows that after the verdict was rendered, and the appeal taken in the last trial, his Honor proceeded to find all the facts in the case (other than those involved in the issues submitted to the jury) which had not been found by a jury, and which had not been submitted to him in place of the jury, and proceeded to declare the opinion upon this assumed state of facts, and sends up the same to be reviewed by us. We know no warrant for this; and we mention it for the purpose of aiding the next trial. In looking into the pleadings and the evidence, we see that the case is exceedingly complicated. And the issues which were submitted to and found by the jury, do not cover the case, and will not enable the Court to decide it. Probably the parties will find their interest in agreeing to a reference under the code, or in waiving a jury, and allowing the Judge to find the facts.
But, all that we can say is, that there is error, and that there must be a venire de novo.
PER CURIAM. Venire de novo.
Abrams v. Cureton, 74 N.C. 526; Jackson v. Comrs., 76 N.C. 284; Rheav. Deaver, 85 N.C. 340; Wynne v. Heck, 92 N.C. 416; Egerton v. Carr,94 N.C. 653; S v. Weathers, 98 N.C. 687; S v. Howard, 129 N.C. 673;Martin v. Mask, 158 N.C. 443; Trust Co. v. Wilson, 182 N.C. 170; Taylorv. Meadows, 182 N.C. 267.