W. G. EGERTON, Administrator, v. CHAS. CARR et als.

## Deed—Construction—Trust—Evidence.

1. The intestate of plaintiff executed the following instruments: "The following notes I leave in trust with my son-in-law, Elias Carr, to be equally divided between my daughters, M. H. H., V. V. W. and P. D. A., after my death, &c., which was duly proved and registered; *It was held*, that the instrument was, in form and effect, a deed of conveyance, operating at once, and that it was irrevocable.

2. Such instrument operated to pass a present equitable interest to the defendant Carr, coupled with a trust, which can be enforced against him when the time for division of the fund arrives.

3. The technical rules relating to land, which require a legal estate in the trustee, to which the trusts may adhere, do not apply to unendorsed notes for money, especially since, under our present system, the equitable owner *must* sue on them in his own name.

4. The near relationship of the parties furnishes a sufficient consideration, if one was necessary; and acceptance of the trust by the trustee furnishes a consideration for its enforcement against him.

5. The deed creates an *executed*, as distinguished from an *executory*, trust, and leaves nothing further to be done, except to distribute the fund among the *cestui que trust*.

6. When the *character* of the instrument, upon inspection, is left doubtful, parol evidence is admissible to show the intention of the maker.

(*Overton* v. *Sawyer*, 7 Jones, 6; *Thompson* v. *McDowell*, 2 D. & B. Eq., 463; *Henry's Ext'r* v. *Ballard*, 2 Car. Law Rep., 595 (395); *Belcher's will*, 66 N. C., 51; *Roberison* v. *Dunn*, 2 Murp., 133; *Clayton* v *Liverman*, 7 Ired., 92; *Abrams* v. *Cureton*, 74 N. C., 523; *Willey* v. *Gatling*, 70 N. C., 410, cited and approved).

CIVIL ACTION, tried before *Phillips, Judge,* at Fall Term, 1885, of the Superior Court of WARREN county.

On the 13th day of March, 1880, Maria A. Kearney, the intestate of the plaintiff, being the owner of sundry notes for the payment of money, which had been before placed in the hands of the defendant, as her agent, executed the following instrument in writing, in reference thereto:

"The following notes I leave in trust with my son-in-law, Elias Carr, to be equally divided between my daughters Martha H. Harris, Valeria Virginia Williams and Polly Dawson Alston, after my death, to-wit:

1st. Against M. K. Williams, dated June 7th, 1879, for $60.
2d.    "    "    "    "    Oct. 1st, 1875, for $200.
3d.    "    "    "    "    Aug. 12th, 1874, for $200.
4th.    "    "    "    "    Oct. 15th, 1874, for $200.
5th.    "    "    "    "    June 3d, 1875, for $150.
6th.    "    "    "    "    Dec. 20th, 1877, for $60.
7th.    "    Lucy E. Polk,    "    Oct. 8th, 1877, for $200.

Witness my hand and seal, this 13th day of March A. D., 1880.

(Signed)    MARIA A. KEARNEY, [Seal].
Witness: S. D. TWITTY."

The instrument was proved by the oath of the subscribing witness, on August 15th, 1884, and registered soon after.

At the time of the execution, the maker expressed to the defendant, then in possession, her wish that the notes should be

kept by him until her death, and then delivered to the parties named. The notes were payable to her, and remained unendorsed.

She never applied to the defendant for these papers, but subsequently gave him another bond for about $1,100.00 against Parker, Watson & Co., as to which she said she wanted to make a further trust. The intestate died in 1883. The defendant has caused new notes be executed in renewal, which with that orally delivered to him, he still holds, and refuses, on plaintiff's demand, to surrender or account for to the administrator.

This action is for the recovery of the notes specified in the writing, or their value, or of those substituted in the place of the original, and to the issue: "Is the plaintiff the owner of the notes or bonds set forth in the pleadings?" The jury under instructions of the Court, answered "Yes."

From the judgment rendered according to the verdict, the defendants, among whom are the three named daughters, appeal.

*Mr. L. C. Edwards*, for the plaintiff.
*Mr. Jos. B. Batchelor*, (*Mr. John Devereux, Jr.*, was with him on the brief,) for the defendant.

SMITH, C. J. (after stating the facts). To be effectual, the sealed instrument can operate only in one of three ways, either:

I. As a testamentary disposition of the fund; or,

II. As a gift *inter vivos* of it to a trustee, for distribution among the intended beneficiaries, at the donor's death, the interest meanwhile accumulating; or,

III. As a *donatio causa mortis*, revocable during the donor's life, which partakes of the nature of both.

I. It cannot be upheld as a testamentary disposal of the notes, for the single sufficient reason, that it has not the required number of attesting witnesses; as a will whether professing to pass real or personal estate, must be made in the presence of not less than two subscribing witnesses, nor has it the requisite of a holographic paper. The Code, §2136.

II. It is not a gift *causa mortis*, for this must be given in prospect of approaching death, and not only was the donor not ill at the time, but she lived three years afterwards.

A *donatio causa mortis*, is said by BATTLE, J. delivering the opinion in *Overton* v. *Sawyer*, 7 Jnoes, 6, to be, "not a legacy, which requires the assent of the executor to vest the legal title in the donee, but it is a gift *made in contemplation of death*, which upon delivery, passes the legal title at once to the donee, upon condition to be void if the donor do not die."

III. If effective in passing an equitable interest in the securities then held by the defendant Carr, (and the notes not being endorsed, none other could vest,) the instrument must be deemed to be a deed of conveyance, operating at once, and irrevocable, and creating an equity in the daughters, capable of being enforced, when the time for division among them arrived. The Court, on the trial, ruled that the writing, upon the face and in the light of surrounding circumstances, was, and was intended to be, testamentary, and as it was legally insufficient to operate as a will, it could not operate at all, and was void. The jury were accordingly directed to find the issue in favor of the plaintiff, and such was their verdict.

In passing upon the legal character and effect to be given to the act of the deceased in making the writing, we must not lose sight of the wholesome rule, which, in the language of GASTON, J., "requires the Courts to be benignant in the interpretation of solemn and deliberate acts, so that they may avail, *if possible*, rather than perish altogether."

The execution of the instrument was careful, and with a well defined intent, not only conveyed in its terms, but orally made known at the time, to make a present provision for conferring a future benefit upon the object of the donor's bounty.

It purports to convert an agent into a trustee, and to attach trusts, which the defendant Carr, by his assent, accepts and agrees to discharge. The trusts involve the retention and management of the securities thereafter, not, as before, for the donor's benefit,

and under her control, but to account for and pay over their accumulations, at her death, thus vesting a present right in the donees, to have the fund secured, but not to be put in their possession, until the happening of a future specified event, which must occur, though at an uncertain day.

The funds which the donor declares, " I leave" in the hands of the trustee, becomes his, to hold and manage, and finally to divide among the daughters, for which ends an equitable interest at once is vested in him.

The only feature which gives a testamentary aspect to the paper, and upon which its nullity is made to depend, is found in fixing the period of enjoyment at the donor's death, while most of them point to a present and *inter vivos* act.

It is but a partial disposition of the intestate's estate. A person is designated to manage the funds during her life, and whose functions cease with their delivery over when she dies, while the functions of an executor begin, just where those of the trustee end. There is no reservation of authority or of interest in them thereafter, such as are implied in a gift *causa mortis*. These are the qualities of a deed rather than of a will, and no attempt is made to put the instrument in the form required for the latter.

" It does not follow," we quote again from the opinion of the same learned Judge, delivered in *Thompson* v. *McDowell*, 2 D. & B. Eq., 463, " because an instrument is to *produce important results after death*, that therefore it must be *testamentary*. To render it testamentary, it is essentially necessary that it should be made to depend on the event of death, as *necessary to its own consummation*."

There were many features in the instrument, about which this was said, which were clearly testamentary, while there were others indicating action to be taken during life, and it was held to be a deed.

The safest test for determining the character of a written paper, must be found in its provisions; whether it professes to be one or the other in name, is not at all conclusive. *Henry's Executors*

v. *Ballard*, 2 Car. Law Rep., 595 (379); *Will and Test. of Belcher*, 66 N. C., 51.

In the latter case, the Court, in referring to the other, inadvertently say the decision was that the instrument was testamentary, whereas it was upheld, not to be a will, but a deed, the Court not having cognizance of the former.

When the character of the instrument, upon inspection, is left doubtful, the intention of the maker may be ascertained by the aid of parol evidence of surrounding circumstances. *Robertson* v. *Dunn*, 2 Murp., 133; *Clayton* v. *Liverman*, 7 Ired., 92.

Assuming, then, as we think to be manifest, that the instrument is, in form and effect, a deed, is there any legal impediment in the way of its operating to pass an equitable interest, coupled with legal power in the defendant, and a trust which can be asserted against him? We do not see any such impediment. The technical rules relating to land, which require a legal estate in the trustee, to which declared trusts must adhere, are not applicable to transfers of unendorsed notes for the payment of money, and more especially since under our present system, the equitable owner not only *may*, but *must* sue in his own name upon them to recover the moneys due. The Code, §177; *Abrams* v. *Cureton*, 74 N. C., 523; *Willey* v. *Gatling*, 70 N. C., 410.

The relationship of the beneficiaries to the donor, their mother, furnishes, if one were necessary, a sufficient consideration for the conveyance, as does the defendant's acceptance of the trust, an adequate consideration for its enforcement against him.

The whole subject is elaborately examined in the notes to *Ellison* v. *Ellison*, 6 Vesey, 656, as found in 1 White and Tudor's Leading Cases in Equity, 167, cited in the appellant's brief.

But the aid of a court of equity is not asked to enforce a duty assumed, and afterwards repudiated by the trustee, for he resists the plaintiff's demand, in order that he may execute that duty freely to the *cestui que trust*, and carry out the donor's intent. The deed is an executed, in distinction from an executory instrument, and accomplishes its purpose by a direct transfer of the

notes, and leaves nothing further to be done, except the distribution among the objects of the donor's affection and bounty.

The action is predicated upon the absolute nullity of the deed, or a supposed reserved power of revocation in the donor, or upon the idea that if the instrument cannot prevail as a testamentary disposition, it shall fail altogether. We do not concur in either view.

There is error, and there must be awarded a *venire de novo*, and in order thereto this will be certified.

Error.                                                    Reversed.