THE STATE v. ED. WEATHERS.

*Constitution—Statute— Convicts—Judge's   Charge—Husband
and   Wife.*

1. While it is erroneous for the Court, where the testimony is conflict-
ing, to single out one witness and make the case turn upon the
truth of his statement, without submitting the aspect presented by
the other evidence : yet if the conflicting statements are put side by
side and the jury instructed that if they believed the facts to be as
testified by one of the witnesses they should so find, it is not error.

2. A husband will be justified in the use of such force as may be neces-
sary to prevent another from taking his wife from him ; otherwise,
if she goes of her own volition.

3. The statutes authorizing the working of persons convicted of criminal
offences upon the public roads, under the supervision of the county
authorities, is not unconstitutional.

(*Anderson* v. *C. F. St. Co.*, 64 N. C., 399; *Willey* v. *Gatling*, 70 N. C.,
410; *Jackson* v. *Com'rs*, 76 N. C., 282, and *Crutchfield* v. *Railroad*,
Ibid., 320, cited).

This was an INDICTMENT for an affray, tried before *Merri-
mon, Judge,* at September Term, 1887, of WAKE Superior
Court.

The defendant Ed. Weathers and three others are charged
in the indictment with committing an affray and mutually
assaulting each, and upon their trial he and Monroe Row-
land were found guilty and the others acquitted.   There-
upon, after a motion for a new trial made and refused, the
Court pronounced judgment, that the convicted defendants
be put to work on the public roads of the county by the
County Commissioners, and so kept for the term of six
months from October 4th, 1887.

From the judgment the defendant Weathers appealed.

The facts are stated in the opinion.

*The Attorney General,* for the State.
*Mr. W. J. Peele,* for the defendant.

SMITH, C. J. There were many witnesses examined, seven in number, and among whom were all the accused except Carey Rowland, and these, other than those participating in the fight, seeing parts of it only, and not the whole, introduce confusion and uncertainty in their narrative of the facts. There is, however, a general concurrence in representing a severe fight between the principal offenders, and the use of a grubbing-hoe, or attempt to use it, and the infliction of a wound upon the head of the appellant, from which, as he emerged from the house, there was a profuse flow of blood—a fight in which the combatants seem to have been voluntarily engaged and each intent on doing his best. It, therefore, devolved upon either to rebut the presumption of guilt by showing that he acted in self-defence and in the exercise of a legal right. The testimony of Weathers and Rowland was at variance, that of each tending to convict the other and excuse himself.

The Court, contrasting the statement of these witnesses, told the jury that, if they believed the representation of facts made by the appellant, they should acquit him; while, if they accepted the testimony of Elijah Horton as a true version of the affair, both would be guilty, but that all the evidence should be considered, and if taken together they were not satisfied that the appellant *fought willingly,* they should find him not guilty.

To this part of the charge appellant's counsel, after the retirement of the jury, were allowed to enter an exception, which is defended in the argument before us upon the ground that undue emphasis is given in the instruction as to the testimony of the witness Horton, in singling it out from that of the others, and to sustain the objection reliance is put on the rulings in *Anderson* v. *C. F. St. Co.,* 64 N. C., 399;

*Willey* v. *Gatling,* 70 N. C., 410; *Jackson* v. *Commissioners of Greene,* 76 N. C., 282; *Crutchfield* v. *R. & D. R. R. Co.,* Ibid., 320.

These cases, as will be found on an examination, establish the proposition that it is erroneous to separate and give prominence to the testimony of one witness, who is in conflict with others, thus leaving out, and in an indistinguishable mass, what others testify, and make the result dependent upon his credit and accuracy.

This is not the case before us, but the testimony of a witness against, and himself for, and these conflicting statements are put side by side and the jury directed, as they might find the facts to be, to convict in one case and acquit in the other, and is accompanied with an instruction to examine and weigh all the testimony and acquit appellant, unless satisfied that he willingly entered into the fight.

2. Counsel further requested a charge to the effect that if Rowland persuaded his sister, the wife of Weathers, to leave her husband, the latter was justified in the use of force and in fighting to prevent it, provided no more was used than necessary to that end. The Court, refusing to so charge, told the jury that it being in evidence that she had separated herself from him previously, even if her brother did persuade her to go with him, and she went of her own will and was not restrained of her liberty in any way, the appellant would not be justified in fighting Rowland to prevent her from going. The attention of the jury was called to the testimony that she struck her husband when engaged in the fight with her brother, in passing upon the question whether she acted upon her own volition or under the persuasion of him.

In our opinion this was a correct statement of the law, and the Court did not err in declining to give the instruction asked, nor that superadded, that if the disposition of the wife to depart from her husband was brought about by her

brother's persuasion and influence, the accused would not be amenable to the law in using no more force than was necessary to prevent her going away with him.

3. The next exception is to the form of the judgment sentencing the appellant to labor upon the public roads under the control and supervision of the county authorities. This, we think, is also untenable.

The Constitution, Art II, Sec. 1, authorizes as a punishment for crime a sentence of imprisonment with or without hard labor, and this to be carried into execution by work and labor on public works or *highways*, &c.

It also allows the farming out of convicts "when and in such manner as may be provided by law," except in certain enumerated crimes of high grade.

It further provides " that no convict *whose labor may be farmed out* shall be punished for any failure of duty as a laborer, except by a responsible officer of the State; but the *convicts so farmed out* shall be at all times under the supervision and control, as to their government and discipline, of the Penitentiary Board or some officer of the State."

The restriction in terms extends to convicts farmed out, that is, hired to persons or corporations, who are not allowed to become masters thereby, to administer correction and discipline at their own will, but this authority is lodged with and retained by responsible State officers, notwithstanding the farming out. But as highways are under county officers, convicts set to work upon them must almost necessarily be under their management, and, under the law, subject to their control.

This rendering of the Constitution finds expression in the enactment contained in section 3433 of *The Code*, and in section 3448. The form of the sentence is fully warranted in the recent act regulating the working of convicts on the public roads, (Acts 1887, ch. 355,) which directly warrants the judgments and places convicts sentenced to imprison-

ment and hard labor on the public roads under the control of the county authorities, investing them with power "*to enact all needful rules and regulations for the successful working of all convicts upon said public roads.*"

There is no error, and the judgment is affirmed.

Affirmed.