The following is the evidence:
J. N. West, the prosecuting witness, testified that he was at Rector's Hotel, in Marshall, at supper; that Peter Haynie, the defendant, was looking through the window of the room, with an open knife in his *Page 805 
hand, and that Haynie called to him, "Hello, little nigger; what are you doing here?" And he replied,"I eat here; what are you doing here? You had better be at home with your wife and babies, cutting wood," etc. After some jesting remarks passed between (1266) the two in the dining room, Haynie went out, and in a little while came back to the door and said to witness, "Come out, Jim; I have got something to tell you." "I stepped out of the room, on the porch, and Haynie said to me, `You throwed off on me in there before those girls.' I said, `No, I was just in fun.' He said, `I was, too, and damned if I liked it.' Then he suddenly struck me on the side of the head, and with his knife or knucks, I do not know which, struck me several blows. One of my ears was nearly cut off, and I was cut, also, a deep gash in my face, and was cut about the clothing. I had to call in a surgeon, and was laid up on account of it for two weeks. The cuts were very severe and painful ones."
On cross-examination witness said: "When I went out of the room, when Haynie told me that he be damned if he liked it, I did say to him, `You are standing in your own shoes.' I mean by that he could do as he pleased. I never told him that I could whip him in a moment. When he struck me on the head and commenced cutting me with the knife, I caught him by the throat, when Bailey, who was standing near, separated us. I had no feeling against Haynie and was on friendly terms with him, and meant no slur on him when I told him that he had better be at home with his wife and babies."
Peter Haynie, defendant-witness, testified as follows: "Was invited by Mrs. Rector to call at the hotel, and did so. Stopped at the window of the dining room, and was standing there joking with those in the room. About that time West came up, and I said, "Hello, little nigger; where are you starting?" He said, `You don't know, do you? You had better be at home, cutting wood and carrying water for your wife.' I said, `I have as good a right to be here as you.' He said, `If you fool with me, I will put you out of here.' I said, `I don't think that you will.' I started to go out of the (1267) room, and as I went out of the door I said, `Jim, come out; I want to see you.' He said, `I don't want to see you.' I passed out of the door, and he came out right after me. I said, `Jim, what is that you said?' He said, `What will you have?' I replied, `Jim, I don't think you ought to have thrown off on me and my family.' One word brought on another, and finally he said, `If you don't like it, you are in your own shoes. You know that I can whip you, don't you?' Bailey, who was standing there, said, `Don't have any fuss here, boys,' and about that time I thought West was going to hit me, and I struck him with my fist in the back of the head. Bailey ran between us and caught me around the waist, and about that time West got me by the *Page 806 
neck, and, pushing me back, was choking me. Then I drew my knife and cut him three or four licks."
Cross-examined: "I had the knife in my pocket when I left the room, and did not draw it till he was pushing me back and choking me. I have been in court twice before — once for shooting a negro and once for disturbing a religious congregation."
The State offered to introduce Dr. Roberts to show the character of the wounds received by West, and also for the purpose of corroborating West. Objection; objection overruled.
Dr. Roberts, witness, testified that he was a physician and surgeon of six years' practice, and that he had attended West and dressed the wounds; that one wound was on the left side of the ear, running down across the ear, cutting a deep gap in it; another wound was in the neck; another was across the cheek; another cut running back, and another in the jaw. One of the cuts was on the right side of the head, across to the nose. There were several cuts in the coat and (1268) in the vest and shirt, and his thumb had also been bitten.
The defendant's counsel asked the court to charge the jury that if at the time defendant did the cutting he was being severely choked by the prosecutor, West, so much so that his life was endangered, that in law would be "being pressed to the wall," and that the defendant would not be guilty.
This the court declined to do, in the words of the defendant's counsel, but charged the jury that if they should find as a fact from the evidence that when Haynie and West left the dining room both entered into the fight willingly, and in the progress of that fight West seized Haynie by the throat and so sorely pressed him that he was under the apprehension of receiving great bodily injury, and he cut to free himself from the grasp of West, he would not be guilty; but that the jury must be the judges of the reasonableness of the apprehension of the defendant. The court further charged the jury that if they found as a fact from evidence that the defendant used the knife when he was not pressed, but because of his passion and anger, the defendant would be guilty. The court further charged the jury, among other things, that, the defendant being a witness in his own behalf, they should consider his testimony with great caution, taking into consideration that the defendant might have a motive to give a false version of the matter, as conviction might mean for the defendant a long term of imprisonment or the payment of a fine and bill of costs; but at the same time that if they were satisfied that the defendant in this matter had told the truth, they would give his testimony the same weight and credence as any other witness who had testified before them and who was unimpeached and uncontradicted.
There was a verdict of guilty, and the court, being of the opinion that the assault was an aggravated one, and the wounds *Page 807 
inflicted on the prosecuting witness painful and serious, one of (1269) which was a heavy and disfiguring scar upon the face, sentenced him to two years in the common jail of Madison County, to be worked at hard labor in the chain gang on the public roads of the said county, in accordance with the statute; which punishment the defendant considered excessive, and therefore excepted to the same. There was a motion for a new trial. Motion overruled. Judgment, and appeal by the defendant.
The physician was competent to testify as to the nature of the wounds and to corroborate the prosecutor in that respect. The court was asked to charge that if the defendant was being severely choked by the prosecutor, so that his life was in danger, then this was "being pressed to the wall," and the defendant would be not guilty. The court charged in lieu thereof that if the jury found that the defendant and the prosecutor both entered into the fight willingly, and during its progress the prosecutor seized the defendant by the throat, so that he was under reasonable apprehension of receiving great bodily injury, and he cut the prosecutor to free himself, he would not be guilty, but that the jury must be the judges of the reasonableness of the apprehension of the defendant. The defendant has no ground to object to this substituted charge. Besides, in fact, there is no exception entered to this or any other part of the charge, and it is not really before us. Taylor v. Plummer, 105 N.C. 56.
The sentence of imprisonment for two years in jail, with leave to be worked on the public roads, is not an excessive punishment for the aggravated assault of which the defendant was found (1270) guilty. S. v. Pettie, 80 N.C. 367. The permission to work the defendant on the public roads is authorized by Laws 1887, ch. 355.S. v. Hicks, 101 N.C. 747; S. v. Weathers, 98 N.C. 685.
No Error.
Cited: S. v. Smith, 126 N.C. 1059; S. v. Hamby, ib., 1067, 1069; S. v.Young, 138 N.C. 573.
 *Page 1