This was a civil action, brought by the plaintiff Security National Bank, administrator c. t. a. of the estate of Sara Sternberger Margolius, upon issuing summons and filing a complaint against Sigmund Sternberger, claiming it was the owner and entitled to the immediate possession of 1,680 shares of stock in the Revolution Cotton Mills, and before the time for answering had expired the said defendant made a motion that David Margolius, Meyer Sternberger, Rosa Sternberger, and Jeanette Sternberger Baach be made parties plaintiff or defendant, so that the rights of all interested parties might be fully determined. Upon hearing of said motion before the clerk, and upon agreement of attorneys representing all parties, the court ordered that David Margolius and Meyer Sternberger be permitted to make themselves parties plaintiff, and that Rosa Sternberger and Jeanette Sternberger Baach be made parties defendant. *Page 812 
The plaintiffs then filed an amended complaint, adopting the complaint originally filed and, in addition thereto, alleging that Meyer Sternberger was the owner and entitled to the immediate possession of 1,680 shares of stock in the Revolution Cotton Mills. The defendants Sigmund Sternberger, trustee and individually, Rosa Sternberger, and Jeanette Sternberger Baach, filed an answer and cross-action denying that the Security National Bank, administrator c. t. a. of the estate of Sara Sternberger Margolius, and David Margolius had any right, title, or interest in and to said stock, and that Meyer Sternberger was not entitled to the immediate possession of the 1,680 shares of stock, as alleged, and the defendants asked for affirmative relief, alleging that the 3,360 shares of stock claimed to be owned by the plaintiffs was included in a block of stock consisting of 8,790 shares owned by the members of the immediate family of H. Sternberger, deceased, and asked that $25,200 cash dividend paid to the Security National Bank, administrator c. t. a. of the estate of Sara Sternberger Margolius, be declared to be the property of the immediate family of H. Sternberger, deceased.
The plaintiffs in due time filed an answer to the cross-action, denying the allegations of the defendants in their answer and cross-action, and prayed for relief as contained in the original and amended complaints. On the call of the case for trial both plaintiffs and defendants moved the court for judgment upon the pleadings. After hearing argument upon the motions, the court overruled the defendants' motion and sustained plaintiffs' motion for judgment on the pleadings. Judgment was accordingly signed, from which defendants appealed to the Supreme Court.
The plaintiff, in the original complaint, alleges: "That the plaintiff Security National Bank is authorized and empowered by law to act as administrator, executor, and in other fiduciary capacities. That on or about 19 October, 1933, the plaintiff Security National Bank was duly appointed by the clerk of the Superior Court of Guilford County as administrator c. t. a. of the estate of Sara Sternberger Margolius, who died testate on or about 15 October, 1933. That the said Sara Sternberger Margolius left a last will and testament, which has been duly probated in common form in the Superior Court of Guilford County, a copy of the same being attached hereto, marked `Exhibit A,' and asked to be read as a part of this complaint. That the plaintiff is advised, informed, and alleges that the said Sara Sternberger Margolius was at the time of her death the owner of 1,680 shares of the capital stock of the Revolution Cotton Mills, a corporation organized under the laws of the State of North Carolina, with its principal office in the county of Guilford in said State. That the plaintiff is advised, informed, and alleges that the defendant is now in possession of the certificates representing the aforesaid 1,680 shares of the capital stock of the Revolution *Page 813 
Cotton Mills, and although the plaintiff has demanded that said certificates of stock be delivered to it as administrator of said estate, the defendant has wrongfully declined and refused to deliver the same. That the plaintiff is entitled to the immediate possession of stock, to the end that it may administer said estate as it is by law required to do.
"Wherefore, the plaintiff prays that the estate of Sara Sternberger Margolius be adjudged the owner of the aforesaid 1,680 shares of the capital stock of the Revolution Cotton Mills, and that judgment be entered in this cause directing the defendant to surrender to it the immediate possession of the certificates for said 1,680 shares of the capital stock of the Revolution Cotton Mills now in his possession, and that the plaintiff be granted such other and further relief as to this court may seem just and proper."
In the amended complaint (after other parties were made plaintiffs, by consent) the plaintiffs allege: "That David Margolius is the husband of Sara Sternberger Margolius, and the sole legatee and devisee of her last will and testament. That the said David Margolius is the beneficial owner of the 1,680 shares of the capital stock of Revolution Cotton Mills described and referred to in the original complaint in this cause, subject to the administration of the estate of the said Sara Sternberger Margolius. That the plaintiff Security National Bank, administrator, is entitled to immediate possession of said stock, and that none of the defendants has any interest, legal or equitable, therein. That the plaintiff Meyer Sternberger is the owner of 1,680 shares of capital stock of the Revolution Cotton Mills, which is now in possession of the defendant Sigmund Sternberger. That the plaintiff Meyer Sternberger has demanded the surrender and delivery of said stock to him by the defendant Sigmund Sternberger, and the said defendant has wrongfully refused to deliver the same to said plaintiff. That the said Meyer Sternberger is the sole and exclusive owner of said stock, and that none of the defendants has any legal or equitable interest therein. Wherefore, these plaintiffs pray: (1) That the relief prayed for in the original complaint be granted. (2) That the plaintiff Meyer Sternberger be adjudged the owner of 1,680 shares of the capital stock of the Revolution Cotton Mills, the certificates for which are in the possession of the defendant Sigmund Sternberger, and that judgment be entered in this cause directing said defendant to surrender to the said plaintiff immediate possession of the certificates for said stock. (3) That the plaintiffs be granted such other and further relief as to the court may seem just and proper."
The will of Sara Sternberger Margolius is dated 28 January, 1933, and after her death duly admitted to probate. The material Item 2 is as follows: "All the rest and residue of my estate of whatsoever kind *Page 814 
and wheresoever found (including all my stock, and all my interest in stock, in Revolution Cotton Mills, whether standing in my name or held by me personally or not) I give, devise, and bequeath absolutely and in fee simple to my husband, David Margolius."
The defendants in their answer allege, among other things: "That on or about 5 January, 1923, for a valuable consideration, Meyer Sternberger, Sigmund Sternberger, Jeanette Sternberger, and Sigmund Sternberger, trustee, entered into a written agreement, same being duly signed by all of the parties thereto, in words and figures as follows: "North Carolina — Guilford County. Whereas our Father, H. Sternberger, whom we all loved and adored, did, on or about 1 June, 1915, in consideration of the sum of one dollar ($1.00), and in the further consideration of mutual love and affection, sell, transfer, and assign unto each of us one hundred and sixty-eight (168) shares of stock in the Revolution Cotton Mills; and whereas, it being the desire of each and all of us to keep said stock intact and within our immediate family, in accordance with the known wish of our beloved father, we did enter into a written agreement on or about 28 December, 1918, wherein and whereby all of the aforesaid stock belonging to each and all of us was placed with Sigmund Sternberger, trustee, as was and is evidenced by a certain written agreement made and entered into by and between each of us on aforesaid date, to wit, 28 December, 1918; and
"`Whereas Sigmund Sternberger owned thirty-nine (39) shares of said stock in addition to the aforementioned 168 shares; and whereas a certain stock dividend has been declared by the Revolution Cotton Mills; and whereas Sigmund Sternberger is now the owner of 2,070 shares of said stock; Meyer Sternberger is the owner of 1,680 shares of said stock; Jeanette Baach is the owner of 1,680 shares of said stock; Rosa Sternberger is the owner of 1,680 shares of said stock; and Sara Margolius is the owner of 1,680 shares of said stock; and whereas it is the desire of each and all of us to keep all of said stock, to wit, eight thousand seven hundred and ninety (8,790) shares of stock in the Revolution Cotton Mills intact and within our immediate family, in accordance with the known wish of our beloved father:
"`Now, therefore, this agreement, made and entered into this 5 January, 1923, by and between Jeanette Baach, of Pocahontas, Virginia; Sara Margolius, of Spartanburg, South Carolina; Meyer Sternberger, Sigmund Sternberger, and Rosa Sternberger, of Greensboro, North Carolina, parties of the first part, and Sigmund Sternberger, trustee, party of the second part,
"`Witnesseth, that for and in consideration of the sum of $1.00 paid to each of the parties of the first part by the party of the second part, the receipt of which is hereby acknowledged, and in the further *Page 815 
consideration of love and affection passing between each and all of the parties hereto, it is mutually understood and agreed by the parties hereto that all of the aforesaid stock, to wit, 8,790 shares in the Revolution Cotton Mills, belonging to the parties of the first part, as heretofore mentioned, be placed, and by these presents it is hereby delivered and placed with the party of the second part in trust to be held intact by the said party of the second part upon the following terms and conditions: That the aforesaid stock and all of it is to be held intact, and that none of said stock, or any part of same, is to be sold, transferred, assigned, hypothecated either directly or indirectly by any of the parties hereto, their heirs, assigns, executors, or administrators, without first obtaining the written consent of all the parties to this agreement, or their heirs, assigns, executors, or administrators.
"`This agreement is to be irrevocable and is to remain in full force and effect until it is mutually annulled jointly by all of the parties hereto, or their respective heirs, assigns, executors, or administrators, and to the faithful performance of the above-mentioned covenants each of us do hereby bind ourselves, our heirs, assigns, executors, or administrators, each to the other. In testimony whereof, we have hereunto set our hands and affixed our seals and signed in sextette, each and all being originals, this being the day and year first above written. Sigmund Sternberger (Seal), Meyer Sternberger (Seal), Jeanette Baach (Seal), Sara Margolius (Seal), Rosa Sternberger (Seal). I do hereby accept the aforementioned stock in the Revolution Cotton Mills upon the terms and conditions stated herein. Sigmund Sternberger, Trustee (Seal).'
"That at the time of the execution of the written agreement referred to in the preceding paragraphs, and also at the time of the delivery of the 8,790 shares of stock in the Revolution Cotton Mills to Sigmund Sternberger, trustee, there was a contemporaneous oral contract and agreement by and among Sigmund Sternberger, Meyer Sternberger, Jeanette Sternberger Baach, Sara Sternberger Margolius, Rosa Sternberger, and Sigmund Sternberger, trustee, and a distinct understanding among all of them that the entire block of 8,790 shares of stock should be kept intact, held by the trustee and beneficially owned as a unit by the immediate family of H. Sternberger, deceased, until such time as said members of said family should unanimously elect to change said understanding and agreement; that said understanding and agreement also included the provision that said Sigmund Sternberger, as trustee, should hold and keep said stock intact for said purpose; that said stock was actually delivered by them to said trustee; that it was, however, agreed that, until modified by the unanimous agreement of said parties, said stock was to remain in the names of the respective parties on the stock book of Revolution Cotton Mills; that each of the respective *Page 816 
parties was to vote the stock so standing in his or her name, and was to receive the dividends thereon during his or her life as a member of the immediate family of H. Sternberger, deceased; but that at the death of any one of said parties, the stock upon which the deceased had been receiving dividends should be considered as being and should continue to be the property of the immediate members of the family of H. Sternberger, deceased; that said agreement was to be binding upon all of the parties thereto unless and until it was mutually annulled, jointly and unanimously by all of said parties; that one of the plaintiffs, to wit, David Margolius, husband of Sara Sternberger Margolius, deceased, was present when said contract and agreement was made; that he understood the terms and conditions thereof, discussed the same fully with parties to said agreement, including his said wife, advised his wife to agree thereto; and that she did agree thereto with his full knowledge and consent." The written instrument of 28 December, 1918, is omitted as it is of similar import as above written instrument set forth in the answer of defendants.
The court below entered the following judgment: "This cause coming on to be heard before Hon. John H. Clement, judge presiding, and the plaintiffs having moved the court for judgment upon the pleadings, and after considering the said motion and hearing the argument of counsel, and the court being of the opinion that the plaintiff's motion for judgment upon the pleadings should be allowed: It is therefore ordered, adjudged, and decreed that the plaintiff Security National Bank, administrator c. t. a. of the estate of Sara Sternberger Margolius, is the owner of and entitled to the immediate possession of 1,680 shares of the capital stock of the Revolution Cotton Mills, represented by certificates registered upon the books of said corporation in the name of Sara Sternberger Margolius, and now in the possession of the defendant Sigmund Sternberger, and that the plaintiff administrator is also the owner of the cash dividend amounting to $25,200.00 heretofore received by it as alleged in the pleadings, and paid by the Revolution Cotton Mills upon the aforesaid 1,680 shares of stock registered in the name of Sara Sternberger Margolius; that the plaintiff Meyer Sternberger is the owner of and entitled to the immediate possession of 1,680 shares of the capital stock of the Revolution Cotton Mills, and represented by certificates registered upon the books of said corporation in his name, and now in the possession of the defendant Sigmund Sternberger; that the defendant Sigmund Sternberger is the owner of 2,070 shares of the capital stock of the Revolution Cotton Mills, represented by certificates registered on the books of said corporation in his name; that Jeanette Sternberger Baach is the owner of 1,680 shares of the stock of the Revolution Cotton Mills, represented by certificates registered upon the *Page 817 
books of said corporation in her name, and Rosa Sternberger is the owner of 1,680 shares of the capital stock of Revolution Cotton Mills, represented by certificates registered upon the books of the corporation in her name.
"It is further ordered, adjudged, and decreed that the defendant Sigmund Sternberger forthwith deliver to the plaintiff Security National Bank, administrator c. t. a. of the estate of Sara Sternberger Margolius, the said certificates of the capital stock of Revolution Cotton Mills for 1,680 shares registered upon the books of said corporation in the name of Sara Sternberger Margolius, and that he likewise deliver to the plaintiff Meyer Sternberger the certificates for 1,680 shares of the capital stock of the Revolution Cotton Mills registered upon the books of said corporation in the name of Meyer Sternberger.
"It is further ordered, adjudged, and decreed that the defendants take nothing by their cross-action, and the same is hereby dismissed. The defendants will pay the cost of this action, to be taxed by the clerk. J.H. Clement, Judge presiding."
The exceptions and assignments of error of the defendants are as follows: "(1) The court erred in refusing to allow the defendants' motion for judgment upon the pleadings. (2) The court erred in allowing the motion of the plaintiffs for judgment upon the pleadings. (3) The court erred in signing the judgment tendered by the plaintiffs."
The main question involved: Is the written instrument in controversy, admitted to be executed by all of the members of the family in reference to the 8,790 shares of stock in the Revolution Cotton Mills, such a contract as to entitle the trustee to hold the certificates of stock against the demands of plaintiffs? We think not.
The written instrument is a simple, passive or dry trust, not an active or special trust. The distinction between simple, passive or dry trusts and special or active trusts is pointed out succinctly in Perry on Trusts and Trustees (7th Ed.), Vol. 1, sec. 18, p. 14, which is as follows: "Trusts are divided into simple and special trusts. A simple trust is a simple conveyance of property to one upon trust, for another, without further specifications or directions. In such case, the law regulates the trust, and the cestui que trust has the right of possession and of disposing of the property, and he may call upon the trustee to execute such conveyances of the legal estate as may be necessary. A special trust is where special and particular duties are pointed out to be performed by the trustee. In such cases he is not a mere passive agent, *Page 818 
but has active duties to perform, as when an estate is given to a person to sell, and from the proceeds to pay the debts of the settler."
In Lewin on Trusts, Vol. 1, the same classification of simple and special trusts is made, the author saying, at page 18: "The simple trust is where property is vested in one person upon trust for another, and the nature of the trust not being prescribed by the settler, is left to the construction of law. In this case the cestui que trust has jus habendi, or the right to be put into actual possession of the property, and jusdisponendi, or the right to call upon the trustee to execute conveyance of the legal estate as the cestui que trust directs."
The distinction between active, passive, and dry trusts has been observed and carefully pointed out in a number of decision by the Supreme Court of this State.
In Jasper v. Maxwell, 16 N.C. 357 (359), Ruffin, J., said: "The question made upon the will has no difficulty. The bank stock is bequeathed to the executors, in trust, to receive the dividends as declared and pay them over to the testator's daughter during her life, or until the charters expire, and upon that event, unless the charters be renewed, the stock itself is given to the daughter. In her, then, are united the present right to the whole profits, and the absolute ultimate dominion — which gives as perfect a property as is known to the law. The cestui que trust
can call for the legal estate at her will. It is not like the case of a bequest in trust for the maintenance of another. There the trustee must retain the property in order to provide out of the profits for the support of the object of the testator's bounty. He must keep the fund in his own hands, lest it be wasted. But here the fund is to go (eventually) directly to the daughter, and in the meanwhile the whole profits, not as a maintenance to be provided by the executor, but as a general pecuniary legacy."
Again it was declared in Turnage v. Greene, 55 N.C. 63 (headnote), that: "Where the right of a cestui que trust to a trust is immediate and absolute, there being no ulterior limitation, and no continuing duty to be performed with it by the trustee, the Court will decree the legal estate to be conveyed to those entitled." This case involved bank stock, the trustee seeking to collect commissions for the payment of dividends to the cestuique trust, but this was denied, this Court holding that the legatees were entitled to have a transfer of stock made to them.
In McKenzie v. Sumner, 114 N.C. 425 (427-8), the will of Thomas J. Sumner devised to Julian E. Sumner in trust for the plaintiff an undivided third part of certain land, and also bequeathed certain corporation stock. It was alleged that the trust being passive and naked, the beneficiary was entitled to a transfer of the property. Chief Justice Shepherd said: "As to the real estate devised to the defendant for the *Page 819 
benefit of the plaintiff, there is no reason why the legal title is not vested in the plaintiff by the statute of uses, as the land is not conveyed to her `sole and separate use,' nor is the trustee charged in any manner whatever with any special duties with respect to the same. . . . The statute, however, does not apply to personal property, such as notes and bank stock, and the legal title remains in the trustee until it is in some way transferred to the equitable owner. Is there any reason why the court, exercising its equitable jurisdiction, should not have directed the assignment of the legal title in this instance? We can see none. The plaintiff being the absolute, equitable owner, there are no ulterior limitations to be protected and, under the terms of the will, the trustee has nothing but a bare, naked legal estate, unaccompanied, as we have remarked, with a single specified duty."
It is generally held that an attempt to create a passive or dry trust in reality, under the statute of uses (C. S., 1740), results in the passage of the legal estate to the cestui que trust. Gold Mining Co. v. Lumber Co.,170 N.C. 273; Springs v. Hopkins, 171 N.C. 486; Lee v. Oates, 171 N.C. 717;Hardware Co. v. Lewis, 173 N.C. 290; Patrick v. Beatty, 202 N.C. 454.
The case of Kirkman v. Holland, 139 N.C. 185, cited by defendants, is distinguishable. In that case it was held to be an active trust. Hospitalv. Crow, 186 N.C. 741 (743). The case also of Egerton, Administrator, v.Carr, 94 N.C. 648, is not in point.
In Gold Mining Co. v. Lumber Co., 170 N.C. 273, at p. 277, it is said: "As the deed created a passive as distinguished from an active trust, there being nothing for the trustee to do but to hold the legal title for the corporation, the use was executed by the statute, or, in other words, possession was transferred to the use, and the corporation thereby acquired the entire estate. Johnson v. Prairie, 91 N.C. 159; Hallyburton v.Slagle, 130 N.C. 482; Cameron v. Hicks, 141 N.C. 21."
In the instant case the written instrument, among other things, has this in it: "Whereas, it being the desire of each and all of us to keep said stock intact and within our immediate family, in accordance with the known wish of our beloved father," etc. Further, "That the aforesaid stock, or any part of same, and all of it is to be held intact and none of said stock is to be sold, transferred, assigned, hypothecated either directly or indirectly or by any of the parties hereto, their heirs, assigns, executors, or administrators, without first obtaining the written consent of all the parties to this agreement, or their heirs, assigns, executors, or administrators." It would seem these additional words — "none of said stock, or any part of same, is to be sold," etc. — were merely explanatory to the trustee, to hold the "stock intact." *Page 820 
It appears from the record that since the original written instrument of 28 December, 1918, the certificates representing the stock ownership of the parties have been actually deposited with and in the possession of Sigmund Sternberger, trustee. The owners of the stock have voted their respective stock at stockholders' meetings and have at all times received and used all dividends paid by the corporation upon their respective shares as their own individual property, and the trustee has had nothing to do with the collection or disbursement of said dividends, or the voting of said stock. Since 11 April, 1919, all of the stock certificates have been issued and registered on the books of the corporation in the name of the individual owners, except the certificates owned by Meyer Sternberger have been issued and registered in his name since 18 April, 1919.
The plaintiffs in this action pray that the trustee surrender to them the certificates of stock which they contend they own, now in his possession, and they be adjudged the owners of same. From the written instrument the trustee has no duty to perform other than to hold the certificates of "stock intact," etc. The trustee has no active duty to perform, he was to refrain from doing anything. This did not make him an active trustee.
The written instrument was a kindly family arrangement consonant with their father's wishes, but it gave the trustee no special or active duties to perform. Was the stock to be held "intact" forever and forever? Who could ultimately get it? Could it never be alienated? If one died, who got the share? The written instrument is uncertain and indefinite as to the ultimate ownership of the certificates of stock, and in other respects.Bridges v. Pleasants, 39 N.C. 26; Weaver v. Kirby, 186 N.C. 387; 26 R. C.L., "Trusts," sec. 20, p. 1183; 7 Pomeroy's Equity Jurisprudence, 4th Ed., secs. 997 and 998.
The stock was never transferred to the trustee on the books of the corporation. The individual members voted the stock and received the dividends. We think under the facts and circumstances of this case that it is manifestly the duty of the court to direct that the prayer of the plaintiffs be granted. We think this is in accord with the generally accepted doctrine of trusts and the decisions of this Court.
The Constitution of North Carolina, Art. I, sec. 31, is as follows: "Perpetuities, etc. — Perpetuities and monopolies are contrary to the genius of a free state and ought not be allowed."
Whether the written instrument is void because it imposes an unreasonable restraint upon alienation, and thus violates the rule against perpetuities, need not be decided in the instant case. Even if it be conceded that the written instrument is sufficient and valid to create a trust, and is a reasonable restraint upon alienation, it is a simple, passive or dry trust. *Page 821 
Do the alleged contemporaneous oral contracts and agreements set forth in the defendants' answer and cross-action contradict and vary with the written instrument? We think so.
We think this is so obvious that it is hardly necessary to cite authorities. Roebuck v. Carson, 196 N.C. 672. The matter is recently set forth in Winstead v. Mfg. Co., ante, 110. The case of Grissom v.Sternberger, 10 Fed., 2d Series, 764, has no bearing on this controversy. There are various other matters discussed by the litigants in their able briefs that we do not think necessary to discuss, as there are no new or novel propositions of law involved.
For the reasons given, the judgment of the court below is
Affirmed.