**WHIRLWIND MANUFACTURING COMPANY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 21712.**

United States Court of Appeals Fifth Circuit.

April 7, 1965.

Billy B. Goldberg, Alfred C. Schlosser, Houston, Tex., for appellant.

Donald W. Williamson, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Woodrow B. Seals, U. S. Atty., James

R. Gough, Asst. U. S. Atty., Houston, Tex., for appellee.

Before WHITAKER,* Senior Judge, and RIVES and JONES, Circuit Judges.

WHITAKER, Senior Judge.

This is an action for the refund of an excise tax, imposed under section 4121 of the Internal Revenue Code of 1954, as amended by section 112 of the Excise Tax Technical Changes Act of 1958 (P.L. 85–859, 72 Stat. 1275), on "articles of the household type," including, among other enumerated articles, "Electric direct motor-driven and belt-driven fans and air circulators."

During the taxable period in question, the appellant manufactured and sold under the brand name of "Sea-Breeze Industrial Fans," electric belt-driven fans with model numbers A24V, A24E, A30V, A30E, A33V, A36V, A36E, A42V, A42E, A48V, A48E, A48E–1, A48E–1.5, and A60E. The numerical part of the model number designates the diameter size of the fan in inches. The V models and E models are essentially the same, the notable difference being in the construction of each to accommodate two different kinds of mountings. The smallest models (A24V and A24E) are capable of moving 5,200 cubic feet of air per minute, while the largest model (A60E) has a capacity of 32,000 cubic feet of air per minute. The different models are powered by electric motors of various sizes ranging from one-fourth horsepower for the 24-inch models to one and one-half horsepower for the A48E–1.5 and A60E models.

Installation of each of the models requires a number of steps, including physically anchoring the fan to the structure at the desired place, attaching switches and appropriate wiring by an electrician, and cutting exhaust and intake openings, which may be screened by shutters at the option of the owner; but the District Court found that all of this was not cumbersome and could be done by an experienced person in about an hour. After the fans have been installed, they become a part of the realty for certain purposes under state law.

Thinking that some of the above-mentioned articles might be held to be taxable as electric belt-driven fans of the household type, appellant filed a quarterly Federal excise tax return for the taxable period ending September 30, 1961, showing a tax thereon in the amount of $2,-515.37, which was paid with the return; but at the same time taxpayer filed a claim for refund for the entire amount of taxes paid. After six months had passed from the filing of the claim for refund, appellant instituted this suit in the District Court for recovery of the $2,515.37 paid.

The case was tried before the court without a jury on November 14, 1963, after which, at the request of the court, both sides filed briefs.

The Government conceded in the District Court that models A48E–1.5 and A60E in the attic fan series were not suitable for household use, and therefore not taxable, both because of their weight and lack of sufficient guards and also because their capacity is substantially greater than is necessary in the size home in which attic fans are used for cooling.

On February 13, 1964, the District Court filed its findings of fact and conclusions of law holding that the models in dispute were subject to the excise tax imposed by section 4121 of the Internal Revenue Code of 1954 and, accordingly, entered judgment for the Government, from which appellant appeals.

The Act does not define "articles of the household type," but Treasury Regulation 48.4121–2 does. It defines them as follows:

(a) *Articles of the household type.* The term "articles of the household type" includes all articles enumerated in section 4121 which have an actual, practical, commercial

---

* Of the United States Court of Claims, sitting by designation.

fitness, or "are" specifically designed and constructed, for household use.

The Regulation also defines "electric fans and air circulators," as follows:

(d) *Electric fans and air circulators.* The term "Electric direct-motor and belt-driven fans and air circulators" includes all types of direct-motor and belt-driven fans and air circulators that provide movement or circulation of air, whether for intake or exhaust or for use within an enclosure, if they are designed and constructed to be operated as independent units. (26 C. F.R. Sec. 48.4121-2 (1960 Rev.))

■ The initial question to be considered is whether the District Court erred in its conclusion of law that the definition of the phrase "articles of the household type," contained in Treasury Regulation 48.4121-2(a), is a reasonable and lawful interpretation of that phrase as it is used in section 4121 of the 1954 Code. If so, it is entitled to respectful consideration and will not be overturned except for weighty reasons. See, e. g., Fawcus Machine Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397 (1930).

■ The words "articles of the household type" are neither unusual, scientific, nor words of art and, therefore, are to be given their ordinary meaning. The regulation, which provides that "The term 'articles of the household type' includes all articles enumerated in section 4121 which have an actual, practical, commercial fitness, *or* are specifically designed and constructed, for household use," [italics ours] seems to us to do just that. If the article is either actually fit for household use as a practical matter or, in the alternative, if it is specifically designed and constructed for that use, then it is an "article of the household type." It could hardly be better defined.

■ Appellant says it cataloged its fans as "industrial fans," not "household" fans; but, of course, its own desig-

nation of them cannot overturn a valid Treasury Regulation.

■ It also says that the Census Bureau required it to include within the category of "industrial propeller fans," attic fans of all sizes; but, again, this requirement of the Census Bureau, which had nothing to do with the administration of the tax laws, cannot overturn a regulation of the Department immediately concerned with the administration of them.

■ Prior to the passage of the Excise Tax Technical Changes Act of 1958 (P.L. 85-859, 72 Stat. 1275, Sec. 112), the tax was levied on the manufacture and sale of direct motor-driven fans and air circulators "not of the industrial type." Under this definition fans were held to be taxable, though of the industrial type, if they were used also in homes, or in stores, restaurants, and similar commercial establishments (H. Rep.No. 481, 85th Cong., 1st Sess., p. 17). The Commissioner of Internal Revenue held that the tax applied to all fans except those which were *solely* of the industrial type. Considerable difficulty was experienced in determining just what fans were *solely* of the industrial type. To simplify administration, Congress decided to make the tax applicable to fans "only if they were of the household type." H.Rep. No. 481, supra. This eliminates all fans unless they are suitable for household use or primarily designed and constructed for such use. If either test is met, it is subject to the tax, irrespective of its designation as an "industrial fan" or its use for other than household purposes, provided it is operated as an independent unit.

■ Accordingly, we think the District Court was clearly correct in holding that Treasury Regulation 48.4121-2(a) was a reasonable interpretation of the statute. It was not only a reasonable interpretation but one clearly correct. It, therefore, has the force and effect of law.

■ Appellant contends that an article which becomes a part of the realty to

which it is affixed by the ultimate user cannot be an "article of the household type." We do not see the relevance of this; but it is clearly contrary to the intent of Congress because section 4121 includes among its specifically enumerated articles a number which became permanently affixed to the realty, e. g., incinerator units, garbage disposal units, door chimes, built-in ovens, and possibly waterheaters.

However, although fans are of the household type, they are not taxable unless "they are designed and constructed to be operated as independent units." Treasury Regulation 48.4121–2(d). Neither party disputes the validity of this part of the Regulation, but appellant says they were not operated as independent units.

In Revenue Ruling 58–411, 1958-a Cum.Bull. 786, the Commissioner illustrated what is meant by the term "independent unit." It was there said:

"Oil burning, circulating, space heaters are not subject to the manufacturers excise tax. If an electric direct motor-driven air circulator, not of the industrial type, is primarily designed and adapted to be operated as an independent unit, it is subject to the manufacturers excise tax imposed by section 4121(b) of the Code. However, if it is primarily designed and adapted to be operated in conjunction with a nontaxable article such as a space heater, it is not subject to the tax."

Electric fans are often primarily designed to be used as a component part of another manufactured item, which may be taxed elsewhere in the Code, e. g., air conditioners (section 4111 of the 1954 Code), or which are specifically excluded from taxation, e. g., space heaters and furnaces. We think the Commissioner of Internal Revenue was justified in concluding that Congress did not intend the tax to apply to such a fan, but only if it was operated as an "independent unit."

But the fact that a fan is affixed to either a wall or a ceiling of a structure or has to be equipped with wiring and switches to make it operational clearly does not prevent it from being an "independent unit" within the meaning of Treasury Regulation 48.4121–2(d).

The only question remaining is whether the District Court was clearly erroneous in its factual findings that: all of the disputed models have an actual, practical, commercial fitness or are specifically designed and constructed for household use, and that none of the disputed models was primarily designed or constructed to be used in conjunction with or as a component part of another manufactured item and are, therefore, "independent units."

It is apparent upon examination of the entire record that the District Court was not "clearly erroneous" in its determinations, as that expression is defined in United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Not only so, but the overwhelming evidence sustains its determinations.

Two of appellant's large purchasers of attic fans, who retailed them, testified that the great majority of them were installed in residences. One of these witnesses, a group merchandise manager of Sears, Roebuck and Co., testified that Sears specifically directed its advertising of such fans to homeowners, and it was homeowners who purchased them. Also, appellant's own advertising, consisting of an eight-page insert in a sales catalog of another retailer, Thermal Supply Company, shows how economical appellant's fans are in cooling a residence and how to select the proper size, located, and install such fan for a particular residence.

Nor is there any evidence in the record showing that the fans in question were to be used in conjunction with or as a component part of another manufactured item.

The judgment of the District Court is Affirmed.