UNITED STATES of America,
Appellant,

v.

George FISHER, as Claimant of One 1954
Cadillac Sedan, Motor No.
546254332, Appellee.

No. 22056.

United States Court of Appeals
Fifth Circuit.

Nov. 26, 1965.

Gewin, Circuit Judge, dissented.

Macon L. Weaver, U. S. Atty., Birmingham, Ala., for appellant.

L. Drew Redden and Ralph Coleman and Rogers, Howard, Redden & Mills, Birmingham, Ala., for appellee.

Before TUTTLE, Chief Judge, and RIVES and GEWIN, Circuit Judges.

TUTTLE, Chief Judge.

The United States appeals from a judgment of the trial court holding that the vehicle described was not subject to forfeiture. This judgment was based upon the court's determination that the

weapon found in the vehicle was not of the kind required by the Federal statutes to be registered. The parties agreed, in a pretrial order, that the only issue was whether the weapon at issue "meets the definition of 'firearm' contained in 26 U.S.C. 5848."

The weapon involved is a small gun with the handle of a pistol, with a barrel 12¼ inches long, having a smooth bore designed for firing a .410 gauge shotgun shell, and having a shotgun sight and having stamped by the manufacturer "For .410 gauge only."

The applicable statute which requires registration "certain firearms" contains the following definition:

"Section 5848. Definitions.

For purposes of this chapter—(1) —Firearm—The term 'firearm' means a shotgun having a barrel or barrels of less than 18 inches in length * * * or any weapon made from a * * * shotgun (whether by alteration, modification, or otherwise) if such weapon as modified has an overall length of less than 26 inches, *or any other weapon, except a pistol * * * from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person* * * *"* (emphasis added).

It is apparent from this definition that the weapon is subject to the Act if it is either a shotgun of the type described above or if it is any other weapon except a pistol. Thus if it is a pistol, it is exempt.

A further definition demonstrates that it is not a shotgun within the definition of the Act, because such term applies only to guns that are designed to be fired from the shoulder.

The definition section of "any other weapon" is as follows:

"(5) Any other weapon—The term 'any other weapon' means any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, but such term shall not include pistols or revolvers or weapons designed, made or intended to be fired from the shoulder and not capable of being fired with fixed ammunition."

Thus, it is clear that in order to be covered by this statute, the gun must fall neither under the category of "shotgun" nor under the category of "pistol or revolver."

▆ In his approach to the case here, the claimant contends that the statute should be construed strictly in order to avoid a forfeiture in the nature of a condemnation of the automobile seized. This statute, however, is not a forfeiture statute, it is a taxing statute. The forfeiture provisions arise under a different section of the National Firearms Act, which permits the forfeiture of any vehicle used in transporting contraband articles, that is, articles as to which the taxing statutes have not been complied with. We think the rule of construction is the same as that which applies to any federal revenue statute, that is, that the court must seek to ascertain what was the intent and purpose of Congress in classifying the different kinds of firearms for tax purposes.

In the trial court the government produced witnesses who testified that the weapon in controversy was not a pistol, but was considered either as a shotgun or, at least, something different from a pistol. The claimant produced witnesses, experienced with guns, who testified that they considered this weapon a pistol. It is plain, however, that those experts who considered it a pistol gave consideration to the fact that it could be converted for use by firing ball cartridges, although it was not, in the shape in which it was presented to the court, suitable for such use.

▆ By using the term "any other weapon" Congress must have intended to cover a weapon that was neither a shotgun (defined for the purpose of this statute as designed to be fired from the shoulder) nor a pistol (not defined in the

statute). It can hardly be doubted that the weapon we are here dealing with falls between what is ordinarily known as a shotgun and what is ordinarily known as a pistol. It has the characteristics of a pistol in that it is hand-fired, but it has the characteristics of a shotgun in that it does not fire fixed ball ammunition but fires shotgun ammunition.

The government points to Internal Revenue Regulations and Treasury Department rulings which indicate that from early days the Treasury Department has considered this type of weapon as falling within some category other than shotgun or pistol. As far back as 1934, Article XX of Regulations 88, provided, "A so-called shotgun with a pistol grip, which fires a shot shell, falls within the class of 'any other weapon' within the meaning of Section 1(a) of the Act. If such a gun is capable of being concealed on the person, it is a 'firearm' subject to the provisions of the Act." (Int. Rev.Bull. CBXIII). Ever since that time this weapon has been placed in a separate category for tax purposes, both for the manufacturers' tax and the dealers' tax.

Congress has authorized a special tax classification for guns recognized as "any other weapon" and it is clear from Report No. 914 of the Committee on Ways and Means to accompany H.R. 4029, 86th Congress, 1st Sess., that Congress acted in light of the outstanding Treasury Regulations dealing with this type of weapon in fixing the tax on what was classed as "other weapons."

The statute itself, at Section 5847, expressly provides:

"The Secretary or his delegate shall prescribe such regulations as may be necessary for carrying the provisions of this chapter into effect."

The Chapter referred to is Chapter 53 of the Internal Revenue Code, which may be cited as the "National Firearms Act."

Pursuant to this authority, regulations promulgated by the United States Treasury Department and contained in 26 C.F.R. Part 179, included a definition of "any other weapon," under Section 179.11, as follows:

"Any other weapon shall mean any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, but such term shall not include pistols or revolvers or weapons designed, made or intended to be fired from the shoulder and not capable of being fired with fixed ammunition."

Then Section 179.35 defines pistol, a part of which definition contains the following language:

"The term [pistol] shall not include any gadget device, any gun altered or converted to resemble a pistol, any gun that fires more than one shot, without manual reloading, by a single function of the trigger, or any small portable gun such as: Nazi belt-buckle pistol, glove pistol, *or a one hand stock gun designed to fire fixed shotgun ammunition.*" (Emphasis added.)

We conclude that the question whether the firearm here involved is a contraband is determined by construing the Federal statute rather than by resolving an issue of fact based on oral opinion testimony. The matter does not come before us, therefore, with the weight of a finding of fact by the trial court. The regulations issued by the Treasury Department seem reasonably adapted to carry out the intent of Congress. They were adopted for the purpose of classifying firearms for purposes of taxation and the classification has been accepted by the Congress in subsequent legislation changing the rate of taxation based on the previously determined Treasury classification. In the absence of any better test, we give effect to the generally recognized rule that Regulations issued by the Secretary of the Treasury, pursuant to statutory authority, and when necessary to make a statute effective, although not a statute,

may have the force of law. Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397; Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831. This principle holds even though the regulation has the effect of bringing property within a category of items to be taxed as set up by Congress without definition. See Whirlwind Mfg. Co. v. United States, 5 Cir., 344 F.2d 153. So, too, the definition of a pistol as a part of the administrative construction of the Act by a department of the government is entitled to great weight. See Review Committee, Venue VII, etc. v. Willey, 8 Cir., 275 F.2d 264, 272; Whirlwind Mfg. Co. v. United States, supra.

It being clear that, under such regulations and under the consistent administrative construction of the Act, this firearm falls within the "any other weapon" classification, we conclude that the trial court erred in holding that it was a pistol, and thus exempt from the provisions of the Act. It was patently a weapon "capable of being concealed on the person."

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

GEWIN, Circuit Judge (dissenting).

With deference I must disagree with my Brothers. The litigants and the trial court evidently felt that the law dealing with the subject of firearms is vague and ambiguous as it relates to the weapon under consideration here. For example, the libel of information described it as a "J. Stevens .410 gauge shotgun-pistol." In my view, the statutes are so vague as related to the weapon in question as to require a factual determination as to the type of weapon here involved.

There was a wide variance between the testimony of experts for the Government and the claimant. There was ample evidence to support the conclusion of the trial court that the weapon in question is a pistol. Several experts so testified. Stoeger's Catalog, referred to by the experts as the "shooter's bible," lists the weapon under the heading "Stevens Single Shot Target Pistols" and more specifically refers to it as "auto-shot." The catalog further characterizes it as "a very satisfactory *pistol* for camping and automobile trips." (Emphasis added.) The manufacturer called it a pistol and indicated that single ball ammunition could be fired from it.

Moreover, it does not appear that the administrative construction of the Act has always been consistent. At one time, Internal Revenue Service concluded that a pistol which had been altered so that it had become a smooth bored weapon nevertheless remained a pistol. Later it was decided such an alteration did change the basic character of the weapon. The record shows that originally all pistols were smooth bored weapons. The record testimony demonstrates that shot shells can be purchased on the market for almost any caliber pistol. The law simply does not accurately describe the weapon under consideration. Factual considerations are necessarily involved, and the witnesses testified as to pertinent facts with reference to the weapon's characteristics and capabilities. Some of the witnesses described the weapon as a "snake gun" often carried by fishermen or other sportsmen. The trial judge had to make a choice and resolve the conflict in the testimony.

Forfeiture is also involved. Property should not be forfeited unless the facts, the law, or both, clearly authorize such a forfeiture. United States v. One 1936 Model Ford, etc., 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249 (1936); Baca v. Commissioner of Int. Rev., (5 Cir. 1964) 326 F.2d 189; Rush v. United States, (10 Cir. 1958) 256 F.2d 862. The forfeiture of a Cadillac automobile in the circumstances here presented is drastic, harsh, unreasonable, and in my view, not within the contemplation of Congress in the exercise of its taxing authority, or in the enactment of legislation authorizing

the forfeiture of vehicles used to transport contraband. Forfeitures are not only required to be within the letter, but also within the spirit of the law. This standard has not been reached in this case.