**OLD VIRGINIA BRICK COMPANY, Incorporated, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 10376.**

United States Court of Appeals Fourth Circuit.

Argued May 6, 1966.

Decided Oct. 4, 1966.

Robert Ash, Washington, D. C., for petitioner.

Morton K. Rothschild, Atty., Dept. of Justice (C. Moxley Featherston, Acting Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, on the brief) for respondent.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

SOBELOFF, Circuit Judge:

In this petition to review a decision of the Tax Court, the taxpayer, Old Virginia Brick Company, seeks to establish the validity of its 1959 election to be taxed as a "small business corporation" under §§ 1371–1377 of subchapter S of

the Internal Revenue Code. Under this provision, added to the Code by the Technical Amendments Act of 1958, a qualifying corporation may elect to have its income taxed directly to the individual shareholders, thereby obviating the initial tax at the corporate level. The law requires that all shareholders must consent to the election, but a corporation is not eligible at all if it has as a shareholder any "person (other than an estate) who is not an individual." Int. Rev. Code § 1371(a) (2).[1] Thus if any shares in the corporation are held by a trust—rather than an estate or an individual—there can be no valid election.

A large block of the Old Virginia Brick Company's stock was held in the name of the estate of H. R. Garden, who had died in 1941 leaving the stock to his wife for life with remainder to his surviving children. On January 9, 1959, an executor of the Garden estate filed a consent to the subchapter S election in the name of the estate.[2] However, the Internal Revenue Service ruled that since all the duties incident to the administration of the estate had been completed no later than 1946, the Garden "estate" would for purposes of the statute be treated as a non-qualifying testamentary trust. The Commissioner determined corporate income tax deficiencies for 1959, 1960 and 1961, in the amounts of $40,569.77, $40,900.22, and $18,714.29 respectively. The Tax Court affirmed this ruling, holding further that the definition of "estates" in the applicable regulations did not create an unreasonable distinction between eligible "estates" and ineligible "trusts."

## I

After providing a monthly stipend for his mother, now deceased, the will of H. R. Garden provided:

"I give, devise and bequeath to my beloved wife, Grace Tinsley Garden, during her life, any and all the balance of all the use and income of all the rest, residue and remainder of my estate, both real and personal. In the event such income shall be insufficient to maintain my said wife in the manner to which she has been accustomed immediately prior to my death, then I give, devise and bequeath to her so much additional of the corpus of my estate as may be necessary for her such maintenance. * * *"

Following the life estate to the wife, the corpus was left to the testator's four children in equal shares. The will contemplated that the executors would serve as testamentary trustees after closing of the estate.[3]

---

1. Section 1371 defines a subchapter S corporation in the following terms:
   "(a) SMALL BUSINESS CORPORATION—For purposes of this subchapter, the term 'small business corporation' means a domestic corporation which is not a member of an affiliated group (as defined in section 1504) and which does not—
   (1) have more than 10 shareholders;
   (2) have as a shareholder a person (other than an estate) who is not an individual;
   (3) have a nonresident alien as a shareholder; and
   (4) have more than one class of stock.
   (b) ELECTING SMALL BUSINESS CORPORATION—For purposes of this subchapter, the term 'electing small business corporation' means, with respect to any taxable year, a small business corporation which has made an election under section 1372(a) which, under section 1372, is in effect for such taxable year."

2. The testator named his wife, son, and daughter as co-executors under his will, but the consent to the corporation's election under subchapter S was signed by the son only.

3. Paragraph Fifth of the will contains the following language:
   "I hereby constitute and appoint my wife, * * *, my daughter, * * *, and my son, * * *, as executors, and, if the court of probate deems it advisable after the time limited by law to make and enter a final judgment and decree of distribution pursuant to this my last will and testament, then, thereafter as testamentary trustees for the benefit of respectively, my mother and my said wife, to carry out the provisions of this my last will and testament * * *."

Soon after the testator's death, the executors collected his assets and paid his debts and funeral expenses. In 1950, they filed an accounting with the probate court covering the administration of the estate through 1946, showing that all income received during that period, less expenses, had been distributed to the testator's mother and wife. From 1947 through 1961, substantially all income was paid to the widow, and there were several sales and purchases of various stocks in the name of the estate. Upon the widow's death in January, 1963, the corpus was distributed among the four children as residuary beneficiaries, and the estate was closed. At no time between the testator's death in 1940 and the final settlement of accounts in 1963 was the Probate Court requested to enter an order closing the estate.

On these facts the question before the Tax Court, and which is now presented to us, was whether at the time of the 1959 election Mr. Garden's estate was qualified to consent. It would not qualify if it was a "person (other than an estate) who is not an individual"; in other words, if it was an "estate" within the meaning of the exception, it did qualify.[4]

■ Since the general term "person" includes both "trusts" and "estates,"[5] and the statute specifically makes "es-

tates" eligible to make the election, the problem is to distinguish between a qualified "estate" and a "trust,"[6] which of course cannot qualify because it is not an "individual." Recognizing this, the Treasury Department in 1959 promulgated § 1.1371–1(e) of the regulations. It specifies that

"Shareholders must be individuals or estates. A corporation in which any shareholder is a corporation, trust, or partnership does not qualify as a small business corporation. The word 'trust' as used in this paragraph includes all trusts subject to the provisions of subchapter D, F, H, or J (including subpart E thereof), chapter 1 of the Code and voting trusts."

■ The Tax Court relied on § 1.641 (b)–3(a) of the regulations, issued under subchapter J of the Code, which for tax purposes considers an estate terminated once the period necessary for the performance of ordinary administrative duties is ended. "For example, where *an executor who is also named as trustee under a will fails to obtain his discharge as executor, the period of administration continues only until the duties of administration are complete and he actually assumes his duties as trustee, whether or not pursuant to a court order.*"[7] Ibid. (Emphasis added.) Mr.

---

4. See note 1 and accompanying text.

5. "§ 7701. DEFINITIONS.
   (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—
   (1) PERSON—The term 'person' shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation."

6. The taxpayer has suggested that the definition of a trust contained in the regulations under § 7701 is the standard to be applied here. But that definition is designed only to distinguish "trusts" from "partnerships" and "associations" and does not touch on the distinction between "trusts" and "estates."

7. The regulation in full is as follows:
   "The income of an estate of a deceased person is that which is received by the

estate during the period of administration or settlement. The period of administration or settlement is the period actually required by the administrator or executor to perform the ordinary duties of administration, such as the collection of assets and the payment of debts, taxes, legacies, and bequests, whether the period required is longer or shorter than the period specified under the applicable local law for the settlement of estates. For example, where an executor who is also named as trustee under a will fails to obtain his discharge as executor, the period of administration continues only until the duties of administration are complete and he actually assumes his duties as trustee, whether or not pursuant to a court order. However, the period of administration of an estate cannot be unduly prolonged. If the administration of an estate is unreasonably prolonged, the estate is considered terminated for Federal income

Garden's medical bills, funeral expenses and other debts had been paid no later than the initial accounting in 1946, and thereafter the executors merely collected the income and passed it on to Mrs. Garden. On several occasions the executors made investments and reinvestments. In short, the administrative duties pertaining to the estate had been fully discharged long before the 1959 election, and while they did not apply for a formal court order closing out the estate, the executors were in fact performing the duties of trustees. The Tax Court correctly concluded that under the regulation, the estate had been converted into a testamentary trust.

## II

Taxpayer objects to the use of this test to deny it the benefit of an election under subchapter S, citing the well-established principle that remedial statutes are to be liberally construed.[8] The regulations under section 641 are directed against the practice of unduly prolonging administration in order to split income between the estate and the beneficiaries, thereby reducing the total tax.[9] Here, on the other hand, it is conceded that there was no attempt to avoid taxes by splitting income, since Mrs. Garden reported substantially all of the estate income on her own returns and paid taxes on it. Therefore, it is argued, application of the regulations here is unreasonable, and should not be sustained.

■■ We do not accept this reasoning. The statute itself restricts the benefits to corporations whose stock is held solely by "individuals" or "estates," thereby necessarily excluding testamentary trusts. A distinction between "estates" and "trusts" must be drawn, and the Commissioner's interpretation of the meaning to be accorded "estates" is entitled to considerable weight.[10] The test adopted here is consistent with the distinction drawn by leading commentators [11] and the American Law Institute,[12]

---

tax purposes after the expiration of a reasonable period for the performance by the executor of all the duties of administration. Further, an estate will be considered as terminated when all the assets have been distributed except for a reasonable amount which is set aside in good faith for the payment of unascertained or contingent liabilities and expenses (not including a claim by a beneficiary in the capacity of beneficiary)."

8. See, e.g., Thompson v. Comr. of Internal Revenue, 203 F.2d 820, 825 (4th Cir. 1953).

9. Compare A. T. Miller v. C. I. R., 39 T.C. 940 (1963), aff'd, Iowa Southern Utilities Company v. C. I. R., 333 F.2d 382 (8th Cir. 1964), with Carson v. United States, 161 Ct.Cl. 548, 317 F.2d 370 (1963).

10. See, e.g., Fawcus Machine Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397 (1931); United States v. Fisher, 353 F.2d 396, 398 (5th Cir. 1965).

11. See 1 Scott, Trusts § 6, p. 50:
"The duties of a trustee are many and varied, their extent depending upon the terms of the trust. The duties of an executor are limited to the winding up of the estate of the decedent and are temporary in their character. In the absence of a statute otherwise providing, the duties of an executor are: (1) to reduce to possession the personal property of the testator; (2) to pay the testator's debts; (3) to pay legacies; and (4) to distribute the surplus, if any, among the testator's next of kin. If a testator names the same person as executor and as trustee, he is acting as executor in performing any of these four duties; but in performing additional duties he is acting as trustee." (Emphasis added.)

12. 1 Restatement (2d) Trusts, § 6(b) provides:
"b. Duties. The duties of an executor are limited to the winding up of the estate of a decedent and are temporary in their character. In the absence of a statute otherwise providing, the duties of an executor are: (1) to reduce to possession the personal assets of the testator; (2) to pay the testator's debts; (3) to pay legacies; and (4) to distribute the surplus, if any, among the testator's next of kin.
If a testator names the same person as executor and as trustee, or imposes

and has been approved by the courts on several occasions under the predecessor to present § 641 of the Code.[13]

■■ Where the Commissioner's regulations clearly conflict with the statutory pattern, courts have not hesitated to strike them down.[14] However, we find nothing in the statute, its legislative history, or the decided cases that prevents the Commissioner from treating an "estate" according to its true nature when it is actually and in substance a testamentary trust. For purposes of § 1371 (a), the term is reasonably limited to the normal situation in which an "individual" has died and the consent of his estate is necessary to effect the election. We therefore agree with the Tax Court that the administrative interpretation is a valid one.

### III

■ As an alternative ground for reversal, the taxpayer points to several Virginia cases holding that where a life tenant was given an unrestricted power to invade corpus for her own benefit, the beneficiary-executrix was deemed to be personally possessed of the corpus and no trust was created.[15] Here, however, Mrs. Garden was only one of three co-executors, and invasion of corpus for her benefit was permitted only if the income proved insufficient to maintain her standard of living.[16] Thus the power of invasion was not so unfettered as to "negate the very idea of trust,"[17] and Mrs. Garden cannot be treated as the sole owner of the corpus.

■ Moreover, in the absence of specific evidence that Congress intended the meaning of "estates" in § 1371(a) (2) to be governed by state law, this statute "is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation." E. g., Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199 (1932). To the extent that Virginia law might suggest a result

upon the executor the duties of a trustee, he is acting as executor in performing the four duties named above; but in performing additional duties he is acting as trustee. He may act as trustee with reference to a part of the property although he is still acting as executor with reference to the rest of the property."

13. Chick v. C. I. R., 166 F.2d 337 (1st Cir. 1948), cert. denied, 334 U.S. 845, 68 S.Ct. 1514, 92 L.Ed. 1769 (1949); Stewart v. C. I. R., 196 F.2d 397 (5th Cir. 1952).

14. See, e.g., Com. of Internal Revenue v. Gifford-Hill Co., 180 F.2d 655 (5th Cir. 1950); Kimbrell's Home Furnishings, Inc. v. C. I. R., 159 F.2d 608 (4th Cir. 1948).

15. See Gardner v. Worrell, 201 Va. 355, 111 S.E.2d 285, 287 (1959); Borum v. National Valley Bank of Staunton, 195 Va. 899, 908–909, 80 S.E.2d 594, 599–600, 47 U.Va.L.Rev. 711, 715–16 (1961); May v. Joynes, 61 Va. (20 Grat.) 692 (1871); Rhett v. Mason, 59 Va.Reports Annot. (18 Grat. 541) 706 (1859); Virginia Code § 55–7 (1950).

16. After granting his widow a life estate in the corpus, the third clause of Mr. Garden's will provided:

"In the event such income shall be insufficient to maintain my wife in the manner to which she has been accustomed immediately prior to my death, then I give, devise and bequeath to her so much additional of the corpus of my estate as may be necessary for her such maintenance."

Authority over the corpus, and therefore over the determination of the widow's needs, is granted in the fifth paragraph, see note 3, supra:

"I hereby constitute and appoint *my wife*, Grace Tinsley Garden, *my daughter*, Marian Elizabeth Garden, *and my son*, Henry Rhiel Garden, Jr., *as executors* * * * to carry out the provisions of this my last will and testament * * *. (Emphasis added.)

17. Hirschmann v. United States, 202 F. Supp. 722 (S.D.N.Y.), aff'd, 309 F.2d 104 (2d Cir. 1962). Compare Koffman v. United States, 300 F.2d 176 (6th Cir. 1962), affirming 193 F.Supp. 946 (E.D. Mich.1961).

*differing* from that prescribed by the regulations, the latter are therefore controlling.[18]

Affirmed.

18. See United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913 (1942) ("future interest" in § 504(b) of 1932 Revenue Act is determined by regulations independent of conflicting state decisions);

Estate of Putnam v. C. I. R., 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 566 (1945) (whether dividends have "accrued" for tax purposes is a question of federal law).