**FULK & NEEDHAM, INC.,** Plaintiff,

v.

**UNITED STATES of America,** Defendant.

No. C-80-WS-66.

United States District Court
M. D. North Carolina,
Winston-Salem Division.

July 29, 1968.

ness corporation for income tax purposes. The question for decision by the Court is as follows: Was the plaintiff ineligible to elect to be treated as a small business corporation for income tax purposes at the time the election was filed and continuing through the calendar year 1962 by reason of the fact that some of its shares were held in trust? This issue is answered in the affirmative.

### Findings of Fact

A. P. Fulk, a partner with a one-half interest in the construction firm of Fulk & Needham, died testate July 14, 1954. The pertinent portion of his will provided as follows for the disposition of his estate:

> "As to any and all real and personal property which is a part of my estate at my death, I do hereby name Ida R. Fulk, my loving wife, and Mary Susan Fulk and Virginia Fulk Petretti as co-trustees of my estate; that said real and personal property of whatever kind, nature and description is to be conveyed by this instrument to said trustees to be held in trust for and during the lifetime of Ida R. Fulk, subject to the following terms and conditions: That Ida R. Fulk is to have a lifetime interest in the benefits of said both real and personal property, for the period of her lifetime only; that at the death of the said Ida R. Fulk, this trust instrument is to terminate and the interest so conveyed and held in trust is then to be divided equally among my two daughters, Mary Susan Fulk, and Virginia Fulk Petretti, share and share alike. In other words, my property is conveyed by this trust instrument, giving my widow a lifetime interest in said both real and personal property, with remainder to my two daughters, Mary Susan Fulk and Virginia Fulk Petretti. By so doing, the trustees above mentioned, by this instrument, are to give to the first taker, that is, Ida R. Fulk, who has a life estate in all of my real and personal property, the in-

Leon L. Rice, Jr., and Murray C. Greason, Jr. (of Womble, Carlyle, Sandridge & Rice), Winston-Salem, N. C., for plaintiff.

Benjamin A. Douglas, Dept. of Justice, Washington, D. C., and William H. Murdock, U. S. Atty., Greensboro, N. C., for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND OPINION.

GORDON, District Judge.

This is an action for the refund of taxes paid by the plaintiff to the defendant for the calendar years 1960, 1961, and 1962. The parties have agreed that the amount involved is merely a matter of mathematical calculation which can be worked out by agreement if required by the results of this action. On November 28, 1958, the shareholders of the plaintiff signed a consent, pursuant to Section 1372(a) of the Internal Revenue Code of 1954, to the election of the plaintiff to be treated as a small busi-

terest, income and profits from the same for the period of her lifetime only; that at her death, the property, real and personal, by said trust instrument, is automatically to go to the above two daughters, in fee simple, share and share alike, thereby terminating the trust instrument without further court action, and without further signatures, title automatically vesting in Mary Susan Fulk and Virginia Fulk Petretti individually by the operation of the law, and by this instrument.

"And it is further my desire that in setting up this trust instrument, that said trustees, as trustees, have the authority without court order, and without court confirmation, and without any prior court approval, to sell, convey, exchange any and all assets conveyed to them as trustees, including both real and personal property. By this instrument, I am doing away with the necessity of any court procedure, proceedings in law or otherwise, giving said trustees the full authority to sell any asset, real or personal without court approval, or confirmation, or other legal proceeding; however, bearing in mind that they will seek legal advice and business advice prior to any exchange of property real or personal, always bearing in mind the best interest of the estate, the best interest of the life estate holder and the best interest of the remaindermen. That they have the authority as trustees to sell any asset of this estate, and to reinvest the funds either in personal property or real property, always considering the best interest of my estate; that any and all acts of buying, selling, exchanging, or reinvesting is to be done by this instrument without court authority or approval; and that the sole accounting to the court is to be had solely by the reports and accounting as provided by law; that no further reports or orders being necessary.

It is therefore impossible that my estate be closed within one year, and this trust therefore will not terminate until the death of my widow, bearing in mind that any reinvestment will be made in the name of the trustees herein mentioned for the use and benefit of the beneficiaries as hereinabove set forth, and subject to the same terms and conditions, if reinvested, as said assets would have been formerly.

"And I do further authorize my trustees, who are also the sole beneficiaries of my estate, and do now empower them with the authority, if they see fit, to operate my interest in any business which is a part of my estate at my death, or to sell my interest in any business which I own at my death, authorizing them to extend credit, terms, as they see fit, bearing in mind the best interest of said estate, relative to a sale, exchange, or other investment pertaining to any assets of my estate."

The will was duly probated and the named executrixes, Ida R. Fulk, Mary Sue Fulk Baucom, and Virginia Fulk Petretti, accepted the administration of the estate. By a power of attorney executed on July 20, 1954, Virginia Fulk Petretti authorized her sister, Mary Sue Baucom, to sign all papers and perform all acts required of Mrs. Petretti in the administration of the A. P. Fulk estate and the trust created under his will.[1]

The bulk of A. P. Fulk's estate consisted of his interest as a partner in the construction firm of Fulk & Needham. In December, 1954, the partnership was incorporated as Fulk & Needham, Inc., and Articles of Incorporation were filed with the Secretary of State. Ida R. Fulk, Virginia Fulk Petretti, and Mary Sue Fulk as "Co-Trustees and Co-Executrixes, Arthur P. Fulk Estate" were named among the original subscribers to stock in the newly formed corporation. The Articles of Incorporation were

1. All documents hereinafter referred to as bearing the signature of Virginia Fulk Petretti were signed by Mary Sue Fulk Baucom pursuant to this power of attorney.

signed by Ida R. Fulk, Mary Sue Fulk Baucom, and Virginia Fulk Petretti as co-trustees and co-executrixes of the Estate of Arthur P. Fulk. At the first meeting of the incorporators on January 1, 1955, 545 shares of stock were ordered to be issued to the trustees of the A. P. Fulk estate. The issuance of the stock was in consideration of the transfer of assets of the partnership to the corporation.

On or before November 3, 1955, a final report of the Estate of A. P. Fulk was filed with the Clerk of the Superior Court of Surry County, North Carolina, and the estate was closed. The final report signed by the co-executrixes showed the distribution of the assets remaining in the estate to themselves as co-trustees named in A. P. Fulk's will. On October 12, 1955, Ida R. Fulk, Virginia Fulk Petretti, and Mary Sue Fulk Baucom formally acknowledged receipt of all the assets of the A. P. Fulk estate in their capacity as co-trustees of the trust created by his will.

From November 3, 1955, the date on which the estate of A. P. Fulk was closed, the record before this Court contains few, if any, references to the trust set up under the will of A. P. Fulk. Under the terms of A. P. Fulk's will, the testamentary trust was to be the receptacle of most of his property, including his partnership interest in Fulk & Needham. Evidence adduced at the hearing tended to show that portions of the trust corpus other than the interest in Fulk & Needham were also in fact treated as the sole and separate property of Ida R. Fulk. Savings and checking accounts containing property of the A. P. Fulk estate were handled almost exclusively by Ida R. Fulk. She made deposits, withdrawals and transfers of the property without regard to the provisions of her husband's will and in her individual, not her fiduciary, capacity.

Ida R. Fulk's dealings with Fulk & Needham, Inc., also reveal that the testamentary trust was disregarded as an entity. The consent of shareholders required under Section 1372 was signed by Ida R. Fulk personally and on behalf of the "A. P. Fulk, Est. by Ida R. Fulk, Adm." Mary Sue Baucom signed for the shares of stock owned by her personally but did not sign as a trustee. Virginia Petretti did not sign in any capacity.

Ida R. Fulk reported on her personal income tax returns all of the undistributed income of Fulk & Needham, Inc., attributable to the 545 shares of stock listed on the books as owned by the A. P. Fulk estate. No distinction was made on Mrs. Fulk's return between income attributable to those 545 shares and income attributable to shares held by her personally.

Neither of the daughters in fact exercised any discretion or control in the management of Fulk & Needham, Inc. Mrs. Fulk was treated as the authoritative spokesman for all shares owned in the name of the A. P. Fulk estate.

The evidence allows the conclusion that Ida R. Fulk and her daughters looked on the assets from A. P. Fulk's estate as the sole property of Ida R. Fulk; that the provisions in his will pertaining to a trust were disregarded; and that no attempt was made by any of the parties to enforce the provisions of will.[2]

### Discussion of Law

Section 1371(a) (2) of the Internal Revenue Code provides that:

> "For purposes of this sub-chapter, the term 'small business corporation' means a domestic corporation which is not a member of an affiliated group (as defined in § 1504) and which does not—
>
> \*   \*   \*   \*   \*   \*
>
> "(2) have as a shareholder a person (other than an estate) who is not an individual."

2. Annual accounts of the trust were not filed with the Clerk of the County as required by N.C.G.S. § 28–53.

Treasury Regulation § 1.1371–1(e) governing the application of the above section of the Code provides that:

"A corporation in which any shareholder is a corporation, trust, or partnership does not qualify as a small business corporation. The word 'trust' as used in this paragraph includes all trusts subject to the provisions of subchapter D, F, H, or J (including subpart E thereof), chapter 1 of the Code and voting trusts. Thus, even though the grantor is treated as the owner of all or any part of a trust, the corporation in which such trust is a shareholder does not meet the qualifications of a small business corporation."

Pursuant to this Regulation, the Commissioner determined that plaintiff corporation had failed to make a valid election under § 1372 because some of its stock was held by the trust created under the will of A. P. Fulk.

Plaintiff contends alternately that at the time of the election and during the taxable years in suit, no trust existed under the laws of the State of North Carolina, and that even if a technical trust existed under state law, it was not a trust in substance as required for purposes of taxation. Plaintiff's contentions cannot be sustained.

■ A. P. Fulk's will is clear and unambiguous in establishing a trust. All of the essential elements required for creation of a valid trust are present: (1) sufficient words to create it; (2) a definite subject matter; (3) an ascertained object; and (4) designated beneficiaries. Shannonhouse v. Wolfe, 191 N.C. 769, 133 S.E. 93 (1926).

Ida R. Fulk, Mary Sue Baucom and Virginia Fulk Petretti acknowledged in writing receipt of the trust assets as co-trustees. Mary Sue Baucom testified at the hearing that she understood the act was simply to acknowledge final settlement of her father's estate, that the instrument represented the assets left, and that those assets were now her mother's property.

■ It has been held in North Carolina that equity will not allow a trust to fail for want of a trustee. Mast v. Blackburn, 248 N.C. 231, 102 S.E.2d 812 (1958); Ladies' Benevolent Society v. Orrell, 195 N.C. 405, 142 S.E. 493 (1928); and Roseman v. Roseman, 127 N.C. 494, 37 S.E. 518 (1900). It would seem to follow that failure of a trustee to understand the significance of signing a receipt for the trust assets and failure to comprehend the duties thereby imposed upon him cannot prevent the trust from coming into existence.

Plaintiff contends that even if the trust came into existence, it was terminated by the action of the beneficiaries and trustees.

Section 337 of the Restatement (Second), Trusts (1959) provides:

"§ 337. *Consent of Beneficiaries*

"(1) Except as stated in Subsection (2), if all of the beneficiaries of a trust consent and none of them is under an incapacity, they can compel the termination of the trust.

"(2) If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination."

See also, Annot. 45 A.L.R. 743 (1926) and Lee, N. C. Law of Trusts 133 (2d ed. 1963).

■ It is clear under the North Carolina decisions that a passive, simple, or dry trust of personal property can be terminated by the consent of the beneficiaries. In McKenzie v. Sumner, 114 N.C. 425, 19 S.E. 375 (1894), the court noted that the Statute of Uses was not applicable to personal property, but that the court can, in the exercise of its equitable jurisdiction and upon application of the beneficiaries, direct that the legal title held by a trustee be transferred to the beneficiary of the trust. " * * * the legal title remains in the trustee until it is, in some way, transferred to the equitable owner." 19 S.E. at 376. See also, Security Nat'l Bank v. Sternberger,

207 N.C. 811, 178 S.E. 595, 97 A.L.R. 720 (1935).

But the trust created by A. P. Fulk's will was active and it is not clear from the North Carolina decisions whether an active trust can be terminated by the parties.

■ The North Carolina court defined an active trust in Chinnis v. Cobb, 210 N.C. 104, 185 S.E. 638 (1936), as " * * * one where there is a special duty to be performed by the trustee in respect to the estate, such as collecting the rents and profits, or selling the estate, or the execution of some particular purpose. [cites omitted]" 185 S.E. at 641. Quoting from Underhill on Wills and from a previous North Carolina decision, the court went on to say that "In other words, when any control is to be exercised or any duty performed by the trustee, however slight it may be, * * * the trust is active." 185 S.E. at 641.

Wachovia Bank & Trust Co. v. Laws, 217 N.C. 171, 7 S.E.2d 470 (1940) involved an attempt to close an active trust. The court refused to allow termination of the trust because of the absence of consent by all the beneficiaries. The decision did concede, though, " * * * that a court of equity has the power, by consent of the interested parties, or when necessity, or even expediency, impels, to close a trust and distribute the assets thereof sooner than was contemplated by the trustor * * *." See, Starling v. Taylor, 1 N.C.App. 287, 161 S.E.2d 204 (1968).

■ But the court has indicated that an "active" trust cannot be destroyed by an agreement between the beneficiaries. In Cole v. Oxford Savings Bank & Trust Co., 186 N.C. 514, 120 S.E. 54 (1923), the testator left $600.00 in trust with the income therefrom to be paid to his son for life and at his death the corpus to be distributed among the other legatees of the estate. The court held that an "active" trust had been created and

the agreement relied on could not destroy it.[3]

■ The "family settlement doctrine" has been utilized in North Carolina to significantly modify "active" trusts. Redwine v. Clodfelter, 226 N.C. 366, 38 S.E.2d 203 (1946); Reynolds v. Reynolds, 208 N.C. 578, 182 S.E. 341 (1935). The decisions show that the doctrine is available generally to preserve a trust not to defeat or destroy it. There are strict limitations on its application to testamentary trusts, First Union Nat'l Bank of N.C. v. Bryant, 257 N.C. 42, 125 S.E.2d 291 (1962); and Carter v. Kempton, 233 N.C. 1, 62 S.E.2d 713 (1950). If the agreement fails to preserve and carry through the intent of the settlor, or does not sufficiently protect the rights of interested minors, or lacks the consent of all the parties it will not be upheld. Stellings v. Autry, 257 N.C. 303, 126 S.E.2d 140 (1962); Duffy v. Duffy, 221 N.C. 521, 20 S.E.2d 835 (1942); Deal v. Wachovia Bank & Trust Co., 218 N.C. 483, 11 S.E.2d 464 (1940).

■ In summary, it would seem that the North Carolina court will allow the termination of a testamentary trust by consent of the beneficiaries so long as it will not defeat the intentions and purpose of the settlor. Penick v. Bank of Wadesboro, 218 N.C. 686, 12 S.E.2d 253 (1940).

The trust created under the will of A. P. Fulk named the income beneficiary and the remaindermen as co-trustees. In that capacity, they were given extended powers of management and investment of the principal. This would indicate that the settlor intended to relieve his wife of full management of the corpus in favor of the collective judgment of the co-trustees. If this interpretation prevailed, a termination of the trust would defeat one of the primary purposes the testator intended it to serve.

---

3. It appears that only seven of ten legatees joined the agreement, but the court made no mention of this in reaching its decision.

■ In any event, a trust can be terminated only by positive action of the parties:

"In respect of the mode of termination of a trust, it may be terminated, as a rule, by a contract or agreement or a conveyance between beneficiaries; by a beneficiary's renunciation or release of the trust; or by his conveyance, transfer, or assignment to a third person." 54 Am.Jur., Trusts, § 75 (1945).

■ The failure of the beneficiaries of the trust created under A. P. Fulk's will to enforce its proper administration is not sufficient to produce a termination of the trust. Its provisions are still enforcible under state law.

Plaintiff contends that although the trust created by the will of A. P. Fulk may have been valid under the state law, it was not a trust in substance as required in an application of the taxing statutes, including § 1371(a) (2).

■ The United States Supreme Court has laid down the general rule that:

"State law may control only when [the operation of] the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law." Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199, 205 (1932).

■ The Fourth Circuit has held that state law does not control in arriving at a distinction between an "estate" and a "trust" for purposes of subchapter S. Old Virginia Brick Co. v. Commissioner of Internal Revenue, 4 Cir., 367 F.2d 276 (1966). The court said that:

"* * * In the absence of specific evidence that Congress intended the meaning of 'estates' in § 1371(a) (2) to be governed by state law, this statute 'is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation.'" [cite omitted]. p. 281

Section 1.1371–1(e) of the Treasury Regulations quoted earlier states that the meaning of the word "trust" as used therein is to be determined by reference to subchapters D, F, H, or J of the Internal Revenue Code. As a necessary correlative of that Regulation, the cases and regulations applying those subchapters are relevant and authoritative in defining a trust for purposes of subchapter S. In Old Virginia Brick Co. v. Commissioner of Internal Revenue, 44 T.C. 724 (1965), affm. 4 Cir., 367 F.2d 276 (1966), the Tax Court said:

"It seems clear that section 1.1371–1(e) of the regulations in effect adopts, as the test to be used in determining whether any of the stock of a corporation is held by a trust (rather than an estate), any regulations under subchapter J which bear upon the question of the creation or termination of estates and trusts * * *" p. 728

In other areas of taxation, substance rather than form and technicality is decisive in determining the existence of a trust, and plaintiff argues that the same criteria should be used to determine compliance with the requirements of § 1371(a). The intention of Congress in enacting subchapter S is important in passing on the merit of this argument.

■ The legislative history of subchapter S indicates that it was the product of a desire on the part of Congress to give tax relief to small businesses and to remove tax consequences as a factor in selecting a form of business organization. The Senate Finance Committee Report on the Internal Revenue Code of 1954 stated that:

"This provision will make it possible for small corporations which are essentially partnerships to enjoy the advantages of the corporate form of organization without being made subject to possible tax disadvantages of the corporation. It will thus eliminate the federal income tax in the selection of the form of business organization which may be most desirable under the circumstances." 83rd

Cong.2d Sess. (1954), 1954 U.S.Code Cong. & Adm.News, p. 4752.

■ The limitations placed on the right of a corporation to elect to be taxed under the subchapter by § 1371 serve two specific purposes: First, to restrict the size and character of the corporation, and secondly, to prevent complex accounting problems in passing the corporate earnings through to a widely diversified group of shareholders. Ibid. and Sen.Rep.No. 830, 88th Cong. 2nd Sess. (1964), 1964 U.S.Code Cong. & Adm.News, p. 1820.

In A & N Furniture & Appliance Co. v. United States, S.D.Ohio W.D., 271 F. Supp. 40 (1967), the District Court was concerned with whether the limitation of § 1371(a) (2) of the Code requiring all shareholders to be persons who are individuals disqualified a corporation having some of its stock held in a voting trust. The Commissioner of Internal Revenue had determined the plaintiff corporation disqualified on the authority of his regulation § 1.1371–1(e). In upholding the taxpayer, the Court concluded that Congress had intended § 1371(a) (2) to merely implement the limitation in § 1371(a) (1) restricting a qualified corporation to no more than ten shareholders. The court reasoned that:

"However, it is more logical to assume that § (2) of 1371(a) was directed toward limiting the size of the corporation, rather than to accounting difficulties. If a corporation were permitted to have as a shareholder another corporation, or a 'normal' trust, then it could avoid the limitation of only ten shareholders. Under those circumstances, all the shareholders of the corporation/shareholder would, in effect, be shareholders of the principal corporation. Or, in the alternative, all the beneficiaries of the trust would, in effect, be shareholders of the small corporation. Thus, the corporation would no longer be a 'small' one, and no longer entitled to operate as a proprietorship for tax purposes." p. 46

But if size was the only consideration in formulating the limitation in § 2, other language would have been more appropriate, i. e., for purposes of the requirement that an electing corporation may have no more than ten shareholders, the shareholders, partners, or beneficiaries of any corporation, partnership, or trust holding stock in an electing corporation will be considered as individual shareholders of the electing corporation. Significantly, in the bill which passed the Senate in 1954 but failed to pass the House, very similar language was used to allow partnerships as shareholders in a small business corporation. Sen. Finance Comm. Rep. on the IRC of 1954, 83rd Cong., 2d Sess. (1954), 1954 U.S. Code Cong. & Adm.News, p. 4752. This provision was not present in the final enactment of subchapter S by Congress in 1958. It would follow that Congress intended § 2 to be more than an adjunct of § 1.

It is probable that the limitation of § 1371(a) (2) was intended to effectuate the congressional objective to make the same tax treatment available to proprietorships and partnerships also available to small corporate businesses structured essentially the same as those organizations taxed as proprietorships and partnerships. The earnings of partnerships and proprietorships are taxed directly to the individual owners. Subchapter S is designed to allow the same result in the taxation of a qualified corporation. The existence of another corporation, a trust, or a partnership as a shareholder in the electing corporation complicates the structure by adding another entity through which earnings must be passed. In this respect the similarity to a partnership or proprietorship is destroyed.

■ The substantial similarity between proprietorships, partnerships, and certain small corporations in the application of the tax laws induced Congress to offer similar tax treatment to all three. It would seem to follow that substance governs compliance with the requirements of § 1371 and that only when a

shareholder is not an individual for tax purposes will a corporation be disqualified from making an election to be taxed under subchapter S.

The defendant rejects plaintiff's argument that "trust" as used in § 1.1371–1(e) of the Regulations must have tax substance to invalidate the election. It contends that the requirements to qualify as a small business corporation under subchapter S are explicit and demanding and must be strictly complied with. This position neglects the essence of plaintiff's argument. Only upon a determination of whether a trust as referred to in the Regulations must have tax substance can the issue of strict compliance be reached. Defendant cites Frentz v. C. I. R., 44 T.C. 485 (1965) in support of its position. In that case, the articles of incorporation had not been filed when the election to come under subchapter S was made. The Internal Revenue Service determined that there was not a valid election. One of the taxpayers contentions was that a de facto corporation (a corporation in substance) existed at the time of the election. The court felt it necessary to dispose of this contention and made a finding of fact that a de facto corporation did not exist when the election was filed. In doing so, it avoided having to decide the issue of whether a de facto corporation could make a valid election.

The Court finds no indication that Congress intended form rather than substance to prevail in applying § 1371(a)(2) and has found no valid reason to disregard general principles of taxation in this particular area of tax law. To the extent that Regulation § 1.1371–1(e) requires a different result it is not upheld.

The decisions are uniform in their approach to determining the existence of a substantive trust for tax purposes. The instrument (or words) creating the alleged trust is the focal point, but where the language of the instrument is not clear or uses the word "trust" and "trustee" but does not create the obligations or relationships common to the ordinary trust, facts outside the instrument are viewed to determine whether they are consistent or inconsistent with the existence of a substantive trust. United States v. De Bonchamps, 9 Cir., 278 F.2d 127 (1960); Hutchinson v. C. I. R., 47 T.C. 680 (1967); Furman v. C. I. R., 45 T.C. 360 (1966); Peck's Estate v. C. I. R., 15 T.C. 788 (1950); Matthaei v. C. I. R., 4 T.C. 1132 (1945); Canelo v. C. I. R., 41 B.T.A. 713 (1940); Rev.Rul. 102, 1961–1 Cum.Bull. 245.

In other situations, funds have been labeled as trust funds by reason of state restrictions on the right of minors to hold property. The intention of the grantors to make a gift in fee simple and not in trust has been deemed sufficient to negate the existence of a trust for tax purposes. Heller v. C. I. R., 41 B.T.A. 1020 (1940); Rev.Rul. 65, 1958–1 Cum.Bull. 13; Rev.Rul. 469, 1955–2 Cum.Bull. 519.

No cases have been found in which the instrument clearly and without ambiguity established a trust and the court refused to uphold it because of the failure of the beneficiaries and the trustees to enforce and administer it.[4]

The case of Matthaei v. C. I. R., supra, is illustrative. The instrument creating the trust was clear and unambiguous but the trust was poorly and improperly administered by the grantors as trustees. The court said that the

4. In VanZandt v. C.I.R., 5 Cir., 341 F.2d 440 (1965), a valid trust was created, and trust property leased back to the settlor simultaneously. The court refused to allow rental payments to the trust by the settlor to be deducted as business expense. This holding is inapposite to the issue of trust existence.

The court looked to the entire transaction and determined that the rental payments were not necessary and proper expenses in the carrying on of a business because of an absence of economic reality. It was admitted that for purposes of income taxation the trust was valid.

trustees may have violated their fiduciary obligations and the laws of the state but "* * * it does not follow that the trusts were without substance." p. 1139.

The will of A. P. Fulk is clear. It is unambiguous. The testator's intent was to establish a trust. It came into existence and was accepted by the trustees. Plaintiff contends only that the failure of the trustees to administer and the failure of the beneficiaries to enforce deprived it of substance. The Court cannot accept this contention. The trust existed and continues to exist independently of the action of the parties and solely on the authority of the instrument creating it.

Plaintiff's position that the unintentional and unknowing failure of the beneficiaries/trustees to act left the trust without substance denies A. P. Fulk's will any effect. Stretching the theory to its logical extreme, the trust would be revived if the trustees began administering it properly and no one objected. This is not the result which the tax principle of substance over form contemplates.

## Conclusions of Law

1. This Court has jurisdiction over the parties and the subject matter of this action under the provisions of 28 U.S.C. § 1346(a) (1).

■ 2. Corporations having some of their shares held in trust are ineligible to elect to be treated as small business corporations for income tax purposes. Section 1371(a), Internal Revenue Code of 1954.

■ 3. For a corporation to be treated as a small business corporation for income tax purposes in a given year, a valid election for such status must be in effect for that year. Section 1371(b), Internal Revenue Code of 1954.

4. There was a valid and subsisting testamentary trust over decedent's property, including the partnership interest subsequently transmuted into shares of stock in plaintiff, at all relevant times, up to, including and beyond November 29, 1958, the date the corporate election was filed.

■ 5. The shares of stock recorded on plaintiff's books as belonging to the A. P. Fulk Estate were owned by a trust on the date of the corporate election. The election was therefore invalid, and consequently no election was in effect for the taxable years involved. Plaintiff was properly determined to be taxable on its income during the years involved.

Accordingly, judgment will be entered.